## W. F. HETHERINGTON v. C. N. STERRY.

1. LIBEL; *Sufficient Petition.* It is not necessarily a defense to an action of libel, that every act charged in the alleged libelous article might be done without the violation of any law. It is enough if the acts charged are such as are calculated to render the party in the judgment of his fellows infamous, odious, or ridiculous.

2. LAWYER; *Libelous Charge.* While a lawyer may sometimes be justified in abandoning the cause of his client in the midst of a litigation, yet to do so unnecessarily and wantonly, and under such circumstances as to cause large additional expense to the client, and especially when the litigation is brought on by following his advice, is unprofessional and dishonorable; and an article charging a lawyer with such conduct is *prima facie* libelous.

*Error from Lyon District Court.*

ACTION brought by *Sterry* against *Hetherington*, to recover damages for an alleged libel. At the September Term, 1881, of the district court, defendant's demurrer to the petition was overruled. This ruling *Hetherington* brings here. The facts are sufficiently stated in the opinion.

*Ed. S. Waterbury, J. M. McCown,* and *W. F. Hetherington,* for plaintiff in error.

*Sterry & Sedgwick,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action of libel. A demurrer to the petition was overruled, and the defendant, as plaintiff in error, now brings the question of the sufficiency of the petition to this court for review. The publication is charged to have been false and malicious, and the single question is, whether the articles complained of are, in view of all the facts disclosed in the petition, libelous. The following is a copy of the articles:

"He [Sterry] advised the [city] council that it had the right to sink a well on the banks of the Cottonwood river, adjacent to Soden's mill-dam, to procure water for the use of the city, and draw all the water it needed from the dam, and Soden could not prevent it; and when Soden enjoined the city from taking water out of the well or out of his mill-pond, Mr. Sterry resigned as city attorney, and left others to ·fight out the difficulty caused by taking his advice, at a cost, as we are informed, of $1,000 to the city of attorney's fees alone."

"Had the [city] council been given proper advice some time ago, it is most probable that the engine and well of the water works would not have been located where they now are, and all the expense of litigation, etc., now entailed upon the city by that idiotic action would have been avoided."

The articles referred to plaintiff's connection with those transactions out of which sprang the litigation between Soden and the city of Emporia, which was considered and deter-

mined by this court in the case reported in 25 Kas. 588, to the opinion in which case, we refer for a full history of the transaction. In the petition filed in this case, plaintiff recites the action of the city at some length, including the purchase of land bordering on the Cottonwood river, the sinking of the well adjacent to Soden's mill-pond, and the connection of the pumps in the water works with the mill-pond, by means of a 12-inch pipe running directly into the pond; and then that the first article charged, by way of innuendo, that the plaintiff advised the council that it had a right to draw all the water it needed from the mill-pond through this 12-inch pipe, and that Soden could not prevent it, and also that the city council having by reason of said advice directly connected the water works of the city with said mill-pond, and having thereby gotten into a law-suit with said Soden, plaintiff then deserted and abandoned his client, and thereby compelled the employment of other attorneys. at a cost of $1,000, which expense the city would not have had to incur if plaintiff had advised the city council correctly. or had not deserted and abandoned his client the moment it got into litigation from following his advice.

We have not attempted to give the various allegations of the petition in detail, but we think we have stated the substance of enough to fully present the question for determination. On the part of the defendant, it is urged that the articles amount to no more than a statement that the plaintiff erred in his advice, and subsequently resigned the office of city attorney; that it is not libelous to charge an attorney with making a mistake in giving advice or otherwise — for attorneys, like all other persons, are liable to mistakes; and that an officer has a right to resign his office, and therefore to state that he has done so is not libelous. On the other hand, plaintiff contends that the articles charge him with giving advice not merely mistaken and erroneous, but that which implies gross ignorance and stupidity, and which led to action not inaccurately characterized by defendant as idiotic; that while in a qualified sense it is true that an officer may resign his

office at any time or an attorney abandon his client's cause at any time, yet that the resignation of a city attorney pending important litigation on the part of the city is like the abandonment by private counsel of his client in the middle of a litigation, and that it is grossly unprofessional for a lawyer to lead his client into difficulty, and when he has once gotten him into it, abandon him in the midst of his trouble and leave him to get out of it as best he can. We agree in the main with the views of plaintiff. It is not strictly true that office is held purely at the pleasure of the incumbent. The public has rights as well as the office-holder, and he may not abandon its duties at his own pleasure. (*The State, ex rel., v. Clayton,* 27 Kas. 442.) Neither is it true that an article is not libelous simply because the acts charged upon the plaintiff are such as he might do without violation of any law. Whatever might be the case as to slander, the law of libel is much broader. In the third edition of 1 Hilliard on Torts, p. 237, § 13, the author thus states the law:

"So every publication by writing, printing, or painting, which charges or imputes to any person that which renders him liable to punishment, or which is calculated to make him infamous, odious, or ridiculous, is *prima facie* a libel, and implies malice in the publisher, without proof of an intent to vilify. (*White v. Nichols,* 3 How. U. S. 266; *Curtis v. Mussey,* 6 Gray, 261.)"

In the third edition of Townshend on Slander and Libel, § 176, the author says:

"That language in writing is actionable *per se* which denies 'to a man the possession of some such worthy quality as every man is *a priori* to be taken to possess,' or which tends 'to bring a party into public hatred or disgrace,' or 'to degrade him in society,' or expose him to 'hatred, contempt, or ridicule,' or 'which reflects upon his character,' or 'imputes something disgraceful to him,' or 'throws contumely' on him, or 'contumely and odium,' or 'tends to vilify him,'' or 'injure his character or diminish his reputation,' or which is 'injurious to his character,' or to his 'social character,' or shows him to be 'immoral or ridiculous,' or 'induces an ill opinion of him,' or 'detracts from his character as a man of

good morals,' or alters his 'situation in society for the worse,' or 'imputes to him a bad reputation,' or 'degradation of character,' or 'ingratitude,' and 'all defamatory words injurious in their nature'"—citing authorities in support of each separate statement. See also *Russell v. Anthony*, 21 Kas. 450.

Now we think it is unquestionably unprofessional and dishonorable for a counsel to advise his client into an illegal course of action, and after his client in pursuance of such advice has gotten into difficulty and litigation, then wantonly and unnecessarily to abandon him and leave him so that he is obliged to employ extra counsel at additional cost to rescue him from his trouble. We do not mean that a lawyer may not abandon a litigation, even *in medias res;* circumstances may sometimes justify or even compel such conduct by the most honorable of men; but still it is generally true that it is the counsel's duty to stand by his client to the end, and unnecessary abandonment of that client at the time when his interests are in jeopardy, and especially when he has been placed in such jeopardy by following the advice of his counsel, is not only unprofessional, but must always be deemed in the estimation of good citizens dishonorable and dishonest conduct. It implies a breach of that confidence and trust which every client has a right to repose in his counsel. The lawyer who has the reputation of advising his client into trouble and then leaving him to get out of it the best way he can, is one who would be shunned by all prudent men in search of legal counsel and assistance; and to charge a lawyer with such a course of conduct is certainly calculated to make him infamous and odious in the sight of all.

Hence we think the court did not err in overruling the demurrer, and its judgment must be affirmed.

All the Justices concurring.