## THE STATE OF KANSAS v. POOL GRINSTEAD.

### No. 11,994.* (64 Pac. 49.)

1. CRIMINAL PROCEDURE—*Change of Venue—Prejudice of Judge not Shown.* A defendant in a criminal case is not entitled to a change of venue on account of the prejudice of the judge against him, because he is himself prejudiced in feeling toward the judge, had violently opposed him in a political campaign for his office, had published during and subsequently to such campaign vituperative and libelous newspaper articles against him, calculated to arouse him to feelings of resentment and prejudice, and, by testimony which the judge asserted to be false, had endeavored to secure his removal from office for violations of the act to prohibit corrupt practices at elections, when the judge, notwithstanding all such unfriendly conduct, by statement filed in court, disavowed all feelings of prejudice against the defendant, and when there was nothing proved against the judge on the hearing of the motion for change of venue showing bias or prejudice on his part toward the defendant.

2. LIBEL—*Averments in Information.* An information for the offense of publishing a libel, not defamatory *per se*, or injurious on its face, is fatally defective unless it avers that the publication tended to produce some of the consequences mentioned in section 2224 of the General Statutes of 1899 (Gen. Stat. 1897, ch. 100, § 349), such as provocation to wrath, exposure to public hatred, deprivation of public confidence, etc.

3. ———— *Averments of Inducement and Innuendo.* While in the case of informations for publications of matter not libelous *per se* or defamatory on their face, matters of inducement and innuendo are required, they need not be separated in statement from one another, but may be alleged together in the same part of the information, and, together, may be allowed to help out one another's averments.

4. ———— *Erroneous Instruction—Burden of Proof.* The following instruction to the jury in a case of criminal prosecution for libel, "It is incumbent on him (the defendant) to satisfy you that it (the libel) was not published with his knowledge or authority, and unless he has so satisfied you, you should return a verdict of guilty," is erroneous, because throwing upon the defendant the burden of proof of a material matter, and contrary to

———————
*For opinion by court of appeals, see 10 Kan. App. —, 61 Pac. 976.—REP.

38—62 KAN.

the rule of the reasonable doubt of an accused person's guilt, requiring him to satisfy the jury of his non-complicity in the crime charged.

Appeal from court of appeals, northern department; JOHN H. MAHAN, ABIJAH WELLS, and SAM'L W. MC-ELROY, judges. Opinion filed March 9, 1901. *In banc.* Affirmed.

*A. A. Godard,* attorney-general, and *S. M. Brewster,* county attorney, for The State.

*Harvey & Harvey,* and *Albert H. Horton,* for appellant.

The opinion of the court was delivered by

DOSTER, C. J. : This is an appeal from a judgment of conviction of libel. The judgment was reversed by the court of appeals upon the following grounds : (1) Error in overruling an application for a change of venue; (2) insufficiency of the information to charge a public offense ; (3) erroneous instructions to the jury. Upon petition of the state, a certification of the case to this court was ordered.

The motion for the change of venue was verified by the appellant's oath and supported by his oral testimony. Summarized, the motion and testimony were to the following effect:

1. Change of venue.

Appellant was the publisher of a newspaper, republican in politics. In 1898, preceding the nomination of a republican candidate for judge of the twenty-second judicial district, appellant had favored Hon. R. M. Emery and opposed Hon. W. I. Stuart as the nominee for that office. The latter received the nomination, but appellant claimed that it was secured by dishonorable political practices, and through the efforts of one Cyrus Leland, whom he alleged to be a tyrannical

and unscrupulous "political boss," in disfavor with the better elements of the party, and that the nomination, being thus brought about, was in opposition to the real desires of a majority of the voters of the party. Appellant, notwithstanding his dislike for Stuart and the methods and influences by which his nomination was procured, agreed to support his candidacy in consideration of forty dollars, in money, to be paid by Stuart, and in further consideration of a promise of the latter's influence to secure him a share of the county printing ; and also engaged to and did act as an intermediary between him and the editors of some other papers in arranging terms for their support similar to those which he had made for himself. These latter undertakings appellant complied with, but Stuart broke faith with him in the matter of the county printing and the payment of the money, whereupon he refused further to support his candidacy and commenced and did thereafter violently oppose him through his newspaper.

Many of the editorials published by appellant in opposition to Stuart's candidacy were of the most vituperative and libelous character. In them the candidate was accused of "bribery, perjury, drunkenness, gambling, libertinism, and various other forms of human debauchery." Stuart, however, was elected, but the appellant continued the publication of the libelous articles concerning him, speaking of him in some of them as "judge anarchist," and in various ways impugning his character and qualifications as a judicial officer.

At the legislative session of 1899 the state senate, in a contest proceeding instituted by James Falloon, Stuart's unsuccessful opponent at the preceding election, found that Stuart had secured his election through

a violation of the provisions of chapter 77, Laws of 1893 (Gen. Stat. 1897, ch. 56; Gen. Stat. 1899, §§ 2666–2680), "An act to prohibit the corrupt use of money and corrupt practices at elections," whereupon that body declared the office of judge of the twenty-second judicial district to be vacant and ordered and directed Stuart to vacate the office. In the case of *Falloon v. Clark*, 61 Kan. 121, 58 Pac. 990, the making of this finding and order was held to be beyond the constitutional jurisdiction of the state senate, and in consequence Judge Stuart retained possession of the office. Upon the hearing of the proceeding in the senate, appellant appeared as a witness against Judge Stuart, and testified to violations by him of the "corrupt-practices act," such as offering and paying money and making promises of political influence for political support. As a consequence of appellant's violent opposition to Judge Stuart's election and the publication of the aforementioned newspaper articles against him and the testimony given against him on the proceeding in the state senate, the judge became greatly prejudiced against the appellant and refused to speak to him when meeting him upon the street or elsewhere, wherefore the application for change of venue was made.

Let it be understood that the above is the appellant's recital of facts. It is not made as a statement of the proved occurrences, except as to the publication of the newspaper articles. Upon the trial of the application for change of venue, Judge Stuart filed a written but unverified statement, in which he disclaimed all feeling of prejudice against the appellant. He denied that he had agreed to pay appellant for his support in the political campaign, either by promises of money or influence to secure the public printing;

denied that he had authorized him to negotiate for the support of other newspapers by promises of money or otherwise, and denied generally that he was guilty of any of the corrupt practices charged against him by appellant during the campaign. He said that he had read some of the appellant's newspaper articles, but had not read all of them ; that those he had read excited in him no feelings of prejudice or animosity ; that he attributed their publication to feelings engendered by the heat of the political campaign, and therefore did not attach any importance to them. He denied that he had refused to speak to appellant when spoken to by him. He admitted, however, that he had not spoken to him, but said that he supposed that appellant had no desire, considering the incidents of the previous campaign, to communicate with or speak to him. Three or four persons filed affidavits in resistance of the application for a change of venue, stating in general terms that they were acquainted with Judge Stuart and had never heard him speak or manifest ill will or prejudice toward appellant, and, from their knowledge of the character and disposition of the judge, that they believed he had no prejudice against appellant and could give him a fair and impartial trial. The above, including the judge's written statement, was all the evidence on the application for change of venue.

In the view of the majority of the court no error was committed in overruling the application. The showing of reasons for the change of venue was no stronger than was made in *City of Emporia v. Volmer*, 12 Kan. 622. In that case the opinion recites the following facts :

"Volmer filed his affidavit in the district court for a change of venue on account of the prejudice of the

judge, setting out that the judge, some two years before, had, in his presence, speaking of him and to him, remarked that he was meaner than a horse-thief, a murderer, or a rebel, that he had no shame, if he had he (the judge) would make his face burn; and that there had since that time been no reconciliation between them. Whereupon the judge filed a counter-affidavit, stating, in substance, that he did not recollect the remarks, thought he did not make them, but if he did, it was while a partner of the city attorney and engaged in the trial of a prosecution against said Volmer for violating a city ordinance; that he had no prejudice against defendant; that they had been in the habit of meeting and speaking together in a friendly manner, and, until the reading of defendant's affidavit, he was unaware that any other than friendly relations existed between them. Upon this the defendant asked time to file counter-affidavits, but the court refused to grant any, and overruled the application for a change of venue. Was there error in this ruling? It must be confessed that it is somewhat novel for a judge to file his own affidavit, to be used on a motion before himself, but the novelty or irregularity, if irregularity it be, of such proceeding, does not warrant us in a reversal, if outside and independent of it the substantial rights of the defendant have not been prejudiced."

In that case it was ruled that the personal knowledge of the judge as to the existence of bias or prejudice in his mind against the defendant, and his statement of it upon the consideration of the application for the change of venue, could not be ignored, and it was therefore held that a reviewing court must consider the judge's statement in passing upon the sufficiency of the evidence in support of the application. After a full consideration of the question, it was ruled by the court, as expressed in the syllabus of the case:

"In criminal cases, on an application for a change of venue on account of the prejudice of the judge, such

facts and circumstances must be shown by affidavits
or other evidence as clearly establish such prejudice ;
and unless it be by such testimony clearly established,
a reviewing court will sustain an overruling of the
application, on the ground that the judge must have
been personally conscious of the falsity or non-exist-
ence of the grounds alleged.''

A similar ruling was subsequently made in the case
of *The State v. Bohan*, 19 Kan. 28. The facts of the
two cases to which we have thus adverted are indeed
stronger in support of the contention made by the de-
fendants in those cases than are the facts in support
of the appellant's contention in this case, because in
them the evidence in support of the application con-
sisted of expressions of dislike and ill will toward the
defendants, made by the judge. In this case the evi-
dence consisted of expressions of dislike and ill will
toward the judge, made by the appellant. In those
cases it was the judge who had expressed ill will
toward the defendants. In this it was the appellant
who had expressed ill will toward the judge. Before
a reviewing court can hold that a judge has erred in re-
fusing a change of venue upon the ground of his bias
and prejudice against a party it must appear that it
is the judge who is prejudiced against the party, and
not that it is the party who is prejudiced against the
judge.

I take leave to say that the above is the opinion of a
majority of my associates. It is not my own opinion.
I dissent from it, and am authorized to say that Jus-
tices GREENE and POLLOCK likewise dissent. In the case
of *City of Emporia v. Volmer*, supra, it will be observed
from the quotation made from the opinion that the
judge denied speaking the words of prejudice and ill
will attributed to him by the defendant, but said that
if, perchance, he had made them it was as an attorney,

while engaged in the trial of a criminal prosecution against the defendant; and he further stated that since then he and the defendant had been in the habit of meeting and speaking together in a friendly manner. In *The State v. Bohan*, supra, the judge quite satisfactorily showed that he did not use the language imputed to him by the defendant; that any criticism he may have made of the defendant was by way of comment made by him as a judge upon evidence adduced in court tending to show the defendant's guilt of a criminal charge. The record of appellant's trial before Judge Stuart is not before us as a whole. In fact, there is very little of it before us, but I take leave to say that, judging by the part that is before us, the appellant does not appear to have been harshly dealt with, but on the contrary appears to have been tried in a fair and impartial manner. However, his right to a change of venue is not to be determined from the fact that after it had been denied he received a fair and impartial trial, but from the showing made by him in support of his application.

Now, I grant that so far as the development of actual facts was concerned the showing was of prejudice of the appellant and not of prejudice of the judge, but I base my dissent upon the ground that it was too difficult for Judge Stuart to remain unbiased and unprejudiced against the appellant, in view of the vituperative and libelous character of the newspaper articles published concerning him. Judges have the frailties and passions of ordinary mortals, and no judge can be as grossly libeled as appellant libeled Judge Stuart without being excited to feelings of resentment and ill will. He may strive against it; he may not be conscious of it; he may possibly overcome it; but the policy of the law should be to relieve a judge

from the embarrassment of sitting in judgment upon the case of one who had so vilely traduced his character as a man and his integrity as a magistrate, and it should, in such case, compel the avoidance of possible wrong-doing. The policy of the law should be to prevent the necessity of a judge's struggling to overcome his natural and just feelings of resentment against one who had, as in this case, and in the public manner described, aspersed his character, and who, by testimony which the judge declared was perjured, had also sought to deprive him of an honorable and lucrative public trust. *It is the existence of prejudice to be overcome that disqualifies a judge from sitting ; it is not the ability to overcome it which qualifies a judge to sit.*

The information in this case was in the following language :

"I, S. M. Brewster, the undersigned county attorney of Doniphan county, in the state of Kansas, who prosecute for and in behalf of the state of Kansas in all courts sitting in and for said Doniphan county, and duly empowered to inform of offenses committed in said county, in the name, by the authority and on behalf of the state of Kansas, come now here and give the court to understand and be informed, that on or about the 5th day of August, 1899, at the county of Doniphan and state of Kansas, one Pool Grinstead was the editor and publisher in said Doniphan county of a weekly newspaper called the Wathena *Star;* that on or about the said 5th day of August, 1899, in the said newspaper, in the said Doniphan county, in the state of Kansas, Pool Grinstead, with intent to expose one Albert Perry to hatred and contempt, and to expose him, the said Albert Perry, to public hatred and contempt, and to deprive him, the said Albert Perry, of public confidence, did then and there unlawfully and wilfully and maliciously compose and publish and cause and procure to be composed and published in said paper, of and concerning said Albert

*2, 3. Information.*

Perry, the following false, malicious and defamatory and libelous words, to wit : 'With Leland's brother-in-law,' meaning thereby the said Albert Perry, 'as chairman of the democratic committee,' meaning thereby the democratic committee of Doniphan county, Kansas, 'even that party was run,' meaning the democratic party in Doniphan county, during the campaign in which the said Albert Perry was chairman of the said democratic central committee, 'pretty much as Leland directed,' meaning thereby Cyrus Leland, who was a leading republican in said county, and meaning thereby that the said Albert Perry, who, during the time referred to, was chairman of the democratic central committee of Doniphan county, Kansas, as such chairman, betrayed the trust and confidence reposed in him by the said democratic party and its central committee, and that the said Albert Perry, as such chairman, suffered and permitted the said Cyrus Leland to control, in the interests of the republican party, the acts of said Albert Perry as such chairman, to the great injury, scandal and disgrace of the said Albert Perry, and contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Kansas.''

In the opinion of the majority of the court the above information is defective. "A libel is the malicious defamation of a person, made public by any printing, writing, sign, picture, representation or effigy tending to provoke him to wrath or expose him to public hatred, contempt, or ridicule, or to deprive him of the benefits of public confidence or social intercourse.'' (Gen. Stat. 1899, § 2224; Gen. Stat. 1897, ch. 100, § 349.) The information does not allege that the publication of the libel tended to provoke to wrath, or expose to hatred, etc. It avers that the defendant intended that these consequences should be produced, but it does not allege that they were produced. An essential to the commission of libel is its tendency

to provoke to wrath or to expose to hatred, etc.   Not only is the tendency in that respect made an essential by the statute quoted, but it is an essential at common law.   (New. Sland. & Lib. 966, 967, *et seq.*) It often occurs that publications are so grossly libelous on their face as to show their tendency to produce the consequences spoken of in the statute.   We may well conclude that a publication which in plain and unambiguous language charges a high degree of moral turpitude is one the natural and necessary tendency of which is to provoke to wrath, or expose to public hatred, or to deprive of the benefits of public confidence, etc., etc. ; but there are injurious publications of which it cannot be said that such consequences naturally or necessarily follow.   In order to understand that they have followed, an averment to that effect is necessary.   The former class are denominated libels *per se*, or libels injurious in themselves.

In the case of libels that upon their face show themselves to be injurious, much explanatory matter, otherwise required by the rules of criminal pleading, may be dispensed with ; but in the case of publications the injurious character of which is not thus shown upon their face all of the averments of inducement, innuendo and consequence must be made.   The publication in question belongs to the latter class.   As charged in the information, and in full, it is only as follows :   "With Leland's brother-in-law as chairman of the democratic committee, even that party was run pretty much as Leland directed."   Upon the face of this publication it is not libelous.   Who Leland was and his relations to political parties were not stated. For aught that appears upon the face of this publication, Leland may have been a democrat, and, as such, entitled to advise and influence his brother-in-law, the

chairman of the democratic committee. Whoever
Leland was and whatever influence he exerted over
his brother-in-law as chairman of the democratic
committee, this publication fails to state that such in-
fluence was anywise to the prejudice of the democratic
committee or the democratic party. Only by knowing
that Leland was not a member of the democratic
party, and therefore, in political morals, not justified
in exerting an influence upon democratic committee-
men and on democratic politics, could it be known
that his brother-in-law, as chairman of the democratic
committee, was politically derelict or dishonorable in
yielding to his influence; therefore, only by knowl-
edge of those things could it be known that the publi-
cation of the statement that Leland, through his
brother-in-law, as chairman of the democratic com-
mittee, ran the affairs of the democratic party as he
directed, would have a tendency to provoke Perry to
wrath, expose him to hatred, contempt, or ridicule, or
to deprive him of the benefits of public confidence or
social intercourse. The publication upon its face
contained no language imputing moral turpitude or
political dishonor, and therefore it had no necessary
tendency to produce the consequences required by the
statute to constitute the offense of libel.

This view of the practice in cases of criminal libel
is supported by *Lawton v. Territory of Oklahoma*, 9
Okla. 456, 60 Pac. 93; *Moody v. The State*, 94 Ala. 42,
10 South. 670; and I think there are no authorities to
the contrary. In the case of *The State v. Nichols*, 15
Wash. 1, 45 Pac. 647, its application to the case of an
information for libel *per se* was rejected, but with a
distinct intimation that it would apply in a case where
the publication did not of itself import a libelous

The State v. Grinstead.

meaning.  Our judgment, therefore, is that the information is fatally defective.

Speaking now for myself, I think the above information is fatally defective in another particular.  It is totally lacking in what is called inducement.  The inducement is that part of an information for a libel not defamatory *per se* which alleges those extrinsic facts which are necessary to explain the meaning of the words used, and to show them to be injurious in effect.  (New. Sland. & Lib. 603.)  In this case the publication alleged to be libelous cannot be understood without an explanatory statement in the information as to who Leland and Perry were, that the one was a republican, the other a democrat, in politics, and such other like matters as would show the impropriety of Leland's attempting to influence Perry politically, and the political turpitude of the latter in yielding to the influence of the former.  There is an entire absence from this information of that part called the inducement.  It is said, however, that the lacking matter is supplied in that part of the information which is called the innuendo.  The innuendo is that part of the information for libel which explains the defendant's meaning by reference to the antecedent matter alleged in the pleading.  It is a statement of the meaning attributable to the words of the publication.  The information in this case contained proper innuendos, as that "Leland's brother-in-law" meant Albert Perry ; that "even that party was run pretty much as Leland directed," meant that Leland, who was a republican in politics, ran the democratic party ; and that Albert Perry, as chairman of the democratic committee, betrayed the political trust and confidence reposed in him, etc., etc.  But there is no statement by way of inducement as to who Leland was, who

Perry was, nor the political affiliations or antagonisms of these gentlemen. The authorities are uniform to the effect that an innuendo cannot supply the place of an inducement in the pleading of a libel not injurious on its face. (13 Encyc. Pl. & Pr. 99–102; Towns. Sland. & Lib. § 336; Bish. New Crim. Proc. §§ 793, 794; New. Sland. & Lib. 616; *The State v. Pulitzer*, 12 Mo. App. 6; *Carter v. Andrews*, 16 Pick. 8; *State v. Atkins*, 42 Vt. 253.)

However, the majority of my associates are of the opinion that the rule of pleading in libel which separates matter of inducement from matter of innuendo, and which assigns different places in the information to its different parts, and which holds an information bad because of an intermixture of the different parts, is too technical for the latter-day liberal view of practice. I think not, and with much respect to them I beg to say that their decision goes to the reversal of a well-established, fundamental and reasonable rule, and that it is in my judgment the first of the kind to be made. My associates, however, admit that matters of inducement and innuendo are still required in informations for publications not libelous *per se*. They only hold that the two may be pleaded together.

The court gave the jury the following instruction:

"There is no dispute in the evidence in this case but that the defendant was, at the time the alleged libelous article was published in said Wathena *Star*, **4. Erroneous instruction.** both editor and publisher of said paper. The law, therefore, presumes that such publication was by the authority of said defendant, and it is incumbent upon him to satisfy you that it was not published with his knowledge or authority, and unless he has satisfied you, you should return a verdict of guilty in this case."

The latter portion of this instruction is erroneous. It not only shifted the burden of proof from the state to the defendant, but required the defendant to "satisfy" the jury that the publication was not made by his authority.   It is elementary that the burden of proof as to all essentials of guilt rests upon the state and not upon the defendant, and that burden must be discharged by a degree of evidence that will satisfy the jury beyond a reasonable doubt.   The above instruction in the particular mentioned reversed the rule, and required the defendant to satisfy the jury that the libelous publication was not made by his authority, and we do not regard such instruction as modified or the error contained in it cured by any of the others that were given.   It may be that the state may rest upon the presumption of authorized publication growing out of the admitted fact of defendant's ownership and control of the newspaper in which the publication was made, and it may have been incumbent upon the defendant to offer evidence in the first instance to rebut this presumption, but it is not incumbent upon him in the doing of it to satisfy the jury of his lack of guilt in the particular mentioned.   If he were required to take the initiative in the introduction of testimony, he was only required to introduce such testimony as would raise a reasonable doubt of his guilt. We do not, of course, hold that it was incumbent on him to introduce testimony in his defense in order to raise a reasonable doubt of his guilt.   It is not the rule that a defendant should first introduce testimony in disproof of any element of the crime charged.   Accused persons are presumed innocent until such presumption is dispelled by convincing proof of guilt arising out of all the evidence in the case, by whomsoever offered, in connection with all the presump-

tions legally applicable. ( *The State v. Crawford*, 11 Kan. 32.)

For the error in giving the instruction above quoted, and for error in overruling the motion to quash the information for the defect in it first herein pointed out, the judgment of the district court is reversed and that of the court of appeals is affirmed, and such proceedings will be had in the district court as may be consistent with this opinion.

DOSTER, C. J., dissenting from first and third paragraphs of syllabus and corresponding portion of opinion.

GREENE and POLLOCK, J.J., dissenting from first paragraph of syllabus and corresponding portion of opinion.

SMITH, J., dissenting.

JOHNSTON, J. (dissenting) : A judge is never justified in granting a change of venue except for some of the grounds prescribed in the statute. The prejudice of a party against a judge is not a cause for change, but it is the prejudice of the judge that disqualifies him to try a case. That prejudice must not only exist, but it must be shown to exist, before the court is warranted in allowing a change ; and a reviewing court cannot say that error is committed in refusing the change on account of prejudice unless the evidence in the record clearly establishes the prejudice of the judge. (Gen. Stat. 1899, § 5423 ; Gen. Stat. 1897, ch. 102, § 173 ; *City of Emporia v. Volmer*, 12 Kan. 622 ; *The State v. Bohan*, 19 id. 28.) If the opposite view were taken, all that would be necessary for a party to do to obtain a change of venue, and thus secure postponement and delay, would be to speak disrespectfully of the judge or to criticize and

The State v. Grinstead.

censure him, and then appear before the court and demand the change—a very dangerous precedent to establish.   It is safer to adhere to the rule of the statute, which requires a showing of prejudice of the judge ; and in the present case there is an entire absence of evidence tending to show prejudice on his part toward the defendant.

In my opinion, the information states an offense, and the court decided correctly in overruling the motion to quash.   It is said to be defective because it did not in terms expressly allege that the publication tended to provoke Albert Perry to wrath or expose him to public hatred, etc.   It did allege that the publication was made with intent to expose Albert Perry to hatred and contempt, and to deprive him of public confidence, etc.   The criminal code provides that an information · which contains the title of the cause, the names of the court and of the parties, and ''a statement of the facts constituting the offense, in plain and concise language, without repetition,'' is sufficient.   The facts narrated in this information certainly show that the publication against Perry was defamatory and libelous.   It not only alleges that the libel was intended to expose Perry to public hatred and contempt, but upon its face it shows that it could have no other effect.   A statement that it tended to expose him to public hatred and contempt would be no more than a conclusion, and no more than is clearly apparent from the averments of the information.   Again, the information, in terms that cannot be misunderstood, charges Perry with fraud and dishonesty ; and where the publication is *prima facie* libelous and would necessarily expose him to public hatred and contempt, and deprive him of public confidence, an additional averment that such is the effect of the publication is the pleading of a

39—62 KAN.

conclusion that is unnecessary. The question was directly involved and decided in *State v. Nichols*, 15 Wash. 1, 45 Pac. 647, where it was held that an information substantially similar to the one under consideration, and which omitted the phrase "tending to expose," etc., was not fatally defective.

The objectionable instruction is not a sufficient ground for reversal. The judge did not by the inapt use of the word "satisfy" intend to change the burden of proof, nor do I think that the jury so understood him. In other instructions, and in clear and forceful language, the jury were told that the burden of proof rested upon the state in the trial; that it never shifted from the state to the defendant; that it rested upon the state to prove every ingredient of the offense, and that if it failed so to prove any material fact there must be an acquittal. In six different instructions the court also stated the doctrine of reasonable doubt, and plainly informed the jury that the *onus* was upon the state, and that a reasonable doubt as to any ingredient of the offense or as to the defendant's guilt entitled him to a verdict of acquittal. As the instructions so given in close connection with the faulty one repeatedly enforced the view that the burden remained upon the state, and that a reasonable doubt as to any essential feature of the case would operate to acquit, the use of the word "satisfy," although subject to criticism, must have been understood only to require of the defendant that he introduce evidence to raise a reasonable doubt as to his knowledge and authority in regard to the publication.

The publication was libelous; it was published in a paper of which defendant was both editor and publisher; that it so appeared in his paper was not denied, and the evidence clearly connected him with the

The State v. Grinstead.

publication, and constituted, at least, *prima facie* proof that the publication was made with his knowledge and authority. To relieve himself and meet the case so made against him, it devolved upon him to introduce proof that it was done without his knowledge and authority. Instead of using the word "show" or the words "introduce testimony tending to show," the court employed the word "satisfy." It is manifest that the court did not intend to place the burden of proof upon the defendant as to this feature of the case, because almost in the same breath the jury were informed that the burden was upon the state. Nor did it intend that the burden must be discharged by the defendant by a degree of evidence that would satisfy the jury beyond a reasonable doubt, for in close connection with this the jury were informed that a reasonable doubt as to whether the defendant knowingly and wilfully made the publication would prevent a conviction. It is conceded that it was incumbent upon the defendant to rebut the presumption resulting from the publication in his paper, and this instruction, when read in connection with the others, only meant that it was incumbent on the defendant to satisfy the jury to such an extent as would enable them to say that there was a reasonable doubt as to whether or not he authorized or had knowledge of the publication.

In a strikingly similar case it was held that the inapt use of a word which, standing alone, might seem to shift the burden of proof was insufficient to warrant a reversal. It was there held that the charge of the court was to be taken as a whole, and was not to be disposed of by a process of dissection, and if, when so taken, the jury could not have gained an incorrect impression as to the burden of proof, the judg-

ment should not be reversed. The conviction in that case was for an offense upon which the severest penalty of the law is visited, and yet the instruction was more faulty than the one under consideration. (*The State v. Earnest*, 56 Kan. 31, 42 Pac. 359.) The testimony in the case and the rulings thereon are not preserved in the record, but the entire charge of the court, which is here, indicates a disposition to give the defendant a fair trial, and we see nothing in the record which justifies a reversal.

I am authorized to say that Justice SMITH joins in dissenting from the judgment of reversal.

CUNNINGHAM, J. (dissenting) : I agree with Justice JOHNSTON in his view of the matters contained in the fourth division of the syllabus and corresponding portion of the opinion, and join in his dissent therefrom.