No. 23,598.

MATT ROHR, *Appellee,* v. P. J. RIEDEL, *Appellant.*

SYLLABUS BY THE COURT.

1. TRESPASSING CATTLE — *Cattle Impounded — Forcible Possession by Owner— Damages.* One whose cattle have been taken by another and are lawfully held for the damage done to the latter's crops by the cattle while running at large is liable for the damage caused by the owner of the cattle forcibly taking possession of them.

2. SAME—*Owner May Not Use Force or Violence to Recover His Cattle.* One whose cattle are in the possession of another does not have the right to take them by force or violence, or in a riotous manner, or by a breach of the peace.

3. SAME—*Action for Damages—Evidence—Threat to Do Violence.* The evidence tended to prove that the plaintiff was lawfully in possession of cattle belonging to the defendant; that the defendant forcibly and with violence took them away from the plaintiff; and that during the process of taking them, the defendant, in response to an appeal by the plaintiff's wife not to kill her husband, called her a vile name. *Held,* that the statement of the defendant to the wife may be introduced in evidence upon the question of assault on the plaintiff.

4. SAME—*Assault Committed.* The evidence tended to show that the defendant committed an assault on the plaintiff.

5. SLANDER—*Words Charged Slanderous per se—Cause of Action Stated.* A petition in an action for damages for slander alleged that the following language, "You (meaning the plaintiff) are a s—— of a b——, and you stuck a knife in my colt and you will never do it again. I will kill you," was falsely spoken of another and that he was damaged thereby. *Held,* that the language charged the person concerning whom the words were spoken with the commission of a crime, imputed to him moral turpitude, and was slanderous *per se;* and *further held,* that the petition stated a cause of action.

6. SAME—*Demurrer to Plaintiff's Evidence Overruled.* The demurrer to plaintiff's evidence which tended to prove the allegations of the petition was properly overruled.

7. SAME—*Language Slanderous per se—Unnecessary Proof.* In an action for damages for slander, it is not necessary for the plaintiff to prove that those who heard the language understood it in a slanderous sense where the language was slanderous *per se.*

8. SAME—*Instruction Properly Refused.* A requested instruction concerning the use of slanderous words spoken in anger during a quarrel to which the plaintiff was a party was properly refused.

Appeal from Graham district court; CHARLES I. SPARKS, judge. Opinion filed November 4, 1922. Affirmed.

*James O. McVey,* of Hill City, and *Herman Long,* of Wakeeney, for the appellant.

*W. L. Sayers,* and *J. S. Parker,* both of Hill City, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff sued the defendant to recover damages for slander and for the wrongful taking of cattle. Judgment was rendered in favor of the plaintiff on both causes of action, and the defendant appeals.

1. Concerning the wrongful taking of the property, the petition alleged that—

"On the —— day of February, 1919, defendant suffered his cattle to run at large upon the southeast quarter of said section thirty-one (31) last above described, and while so running at large, said cattle ate up and destroyed straw to the damage of the plaintiff to the amount and value of five ($5.00) dollars, and the plaintiff thereupon took into his possession four head of said cattle to hold the same for damages, said cattle being so taken by the plaintiff while they were engaged in committing said trespass. Thereupon the defendant came to the home of plaintiff and cursed plaintiff and plaintiff's family, called the plaintiff and the plaintiff's family vile names and threatened to kill the plaintiff with an iron bar and forcibly took said animals from the possession of the plaintiff; said acts were wantonly and maliciously done and the plaintiff was thereby caused to be put in fear and suffered great pain and anguish to his damage in the sum of one hundred ($100.00) dollars. Said acts were done maliciously and for the purpose of injuring and harassing the plaintiff."

The defendant contends that the last part of this paragraph did not state a cause of action. The allegations of this paragraph should not be separated from each other; only one cause of action is stated. It is for damages caused by the defendant's forcibly taking the cattle from the plaintiff. He had a claim against the cattle for damage done by them, and when they were taken away from him,

he was damaged to the amount of that claim. The defendant is liable for all the damage that he did to the plaintiff in taking the cattle. Part of that damage was done by threatening to kill the plaintiff with the iron bar and by putting him in fear, although he was not touched and did not sustain any direct physical injury.

2. The defendant requested the following instructions:

"If you find that the calves taken up by the defendant in February, 1919, were not running at large, as that phrase is defined in instruction No. 5; or if at the time plaintiff took up said calves they were not doing damage to plaintiff's crops; or if plaintiff's agent informed defendant that plaintiff was not holding said calves for damages and requested plaintiff to come and take said calves; or if damages theretofore done by plaintiff's stock, while running at large, to the defendant's crops (and not settled for) equalled or exceeded the damages done under the same circumstances by the defendant's stock to plaintiff's crops, then and in any such case the defendant had a right to take possession of said stock provided he could do so without the use of force and violence in so doing."

"You are instructed that the plaintiff had no right to take and hold possession of the defendant's calves for the damages done by any other animals of the defendant to the crops of the plaintiff."

These instructions were refused; complaint is made because they were not given. In *The State v. Allen*, 107 Kan. 407, 414, 191 Pac. 476, this court had occasion to quote from 3 Blackstone's Commentaries, page 4, as follows:

"Recaption or reprisal is another species of remedy by the mere act of the party injured. This happens, when any one hath deprived another of his property in goods or chattels personal, or wrongfully detains one's wife, child, or servant: In which case the owner of the goods, and the husband, parent, or master, may lawfully claim and retake them, wherever he happens to find them; so it be not in a riotous manner, or attended with a breach of the peace. The reason for this is obvious; since it may frequently happen that the owner may have this only opportunity of doing himself justice; his goods may be afterwards conveyed away or destroyed; and his wife, children, or servants, concealed or carried out of his reach; if he had no speedier remedy than the ordinary process of law. If therefore he can so contrive it as to gain possession of his property again, without force or terror, the law favors and will justify his proceeding. But, as the public peace is a superior consideration to any one man's private property; and as, if individuals were once allowed to use private force as a remedy for private injuries, all social justice must cease, the strong would give law to the weak, and every man would revert to a state of nature; for these reasons it is provided, that this natural right of recaption shall never be exerted, where such exertion must occasion strife and bodily contention, or endanger the peace of society. If, for instance, my horse is taken away, and I find him in a common, a fair, or a public inn, I may lawfully seize him to my own use; but I cannot justify breaking open a private stable, or entering

Rohr v. Riedel.

on the grounds of a third person, to take him, except he be feloniously stolen; but must have recourse to an action at law."

This is old law. It was violated by the defendant when he took the cattle away from the plaintiff. The instructions requested were properly refused. They went too far. They stated that the defend-- ant could take his cattle if he could do so "without the use of force and violence in so doing." That is not the law. He could have taken the cattle without force or violence if he did not do so in a riotous manner nor commit a breach of the peace in taking them.

3. The defendant complains of the admission of testimony given by the plaintiff's wife. The evidence tended to show that at the time the cattle were taken from the plaintiff, the defendant was advancing toward the plaintiff with an iron bar and was threatening to kill him; that the plaintiff's wife was present; that she told the defendant to go off the place, to let the plaintiff alone, and not to kill him; and that then the defendant said, "You s—— of a b——, you have nothing to say." The wife's testimony was properly ad- mitted because it concerned a part of the transaction in which the defendant forcibly took the cattle from the plaintiff.

4. It is contended that the evidence did not show that an assault was made on the plaintiff at the time the cattle were taken. Whether or not there was an assault was a question of fact for the jury to determine. There was ample evidence to show that an assault was made.

5. Concerning slander, the petition alleged:

"The said defendant on the 1st day of February, 1919, at the Farmers Union Elevator in the town of Voda, Trego County, Kansas, and in the presence of and within the hearing of plaintiff and one William Hall, and divers other persons whose names the plaintiff is unable to give at this time, spoke of and concerning the plaintiff the following false, malicious, and scandalous words, viz: 'You (meaning the plaintiff) are a s—— of a b—— and you stuck a knife in my colt and you will never do it again. I'll kill you.' Plaintiff says that all of said words were false and were maliciously said by the defendant for the purpose of humiliating and injuring the plaintiff and that the words so spoken by the defendant greatly humiliated the plaintiff and injured him in his feel- ings and caused him great mental distress and greatly injured and damaged him in his reputation in the community in which he lived all to his damage in the sum of five hundred ($500.00) dollars."

On these allegations, the court submitted the action for slander. It is contended that a cause of action was not stated. It is argued that no facts were "pleaded from which it would appear that the de- fendant intended nor that the hearers would understand the defend-

Rohr v. Riedel.

ant to charge plaintiff with the commission of a criminal offense; and no allegation that any hearer did so understand the language." The language was such that it did not need any explanation. The epithet applied, the threat, and the charge made showed the meaning intended to be conveyed by the defendant. The language was slanderous in itself. This contention is not good.

6. A demurrer of the defendant to the evidence of the plaintiff in support of the allegations of the petition set out in the fifth subdivision of this opinion was overruled. The defendant urges that as error. There was evidence which tended to prove each of the allegations of the petition on this cause of action; the demurrer was properly overruled.

7. The defendant requested the court to instruct the jury that no recovery could be had for the language used unless the hearers understood it in a slanderous sense. That instruction was refused. The court instructed the jury that if the language was used, it was slanderous *per se,* and that the plaintiff could recover upon proof of the utterance of the alleged slanderous words. The language alleged and proved to have been used was slanderous *per se.* The instruction requested by the defendant was properly refused, and the one given by the court correctly stated the law.

8. The defendant complains of the refusal of the court to instruct the jury that, if the alleged slanderous words were spoken in the heat of passion in a quarrel to which the plaintiff was a party, the jury might take into consideration such fact in mitigation of damages. The defendant cites *Miles v. Harrington,* 8 Kan. 425 and 25 Cyc. 421 to show that where slanderous words, actionable *per se,* are spoken in anger caused by the conduct of the plaintiff, the circumstances under which the words were spoken, although not a complete defense to the action, should be considered by the jury in mitigation of damages. The trouble with the argument of the defendant and the authorities cited by him is that the evidence abstracted does not show that the altercation during which the language was spoken was brought about by the conduct of the plaintiff. In *Miller v. Johnson,* 79 Ill. 58, the court said:

"Whatever may be the rule elsewhere, it has been definitely settled in this state that, in an action for slander, the anger or passion of defendant at the time of the publication of the slanderous words is no justification, or even mitigation of damages, unless it is shown the passion was provoked by plaintiff, and even then it can only be proven in mitigation of damages." (p. 60.)

Scoby v. Bank.

It is insisted that the court committed error in overruling the motion of the defendant for a new trial and the motion for judgment in his favor on the special findings of the jury. The defendant bases his argument concerning these propositions on matters that have been discussed.

Other matters are complained of, but they are disposed of by what has been said or are not of sufficient importance to justify further discussion.

The judgment is affirmed.