Jerald v. Houston.

No. 26,110.

Daniel A. Jerald, *Appellant,* v. N. W. Houston, *Appellee.*

SYLLABUS BY THE COURT.

1. Appeal and Error—*Requisites to Review—Time of Taking.* Rule followed that where an appeal from a trial court's ruling on a motion to strike out parts of a petition involving the merits of the action is not taken within six months, the supreme court has no jurisdiction to review it.

2. Libel and Slander—*Actionable Character of Words.* Rule followed that a cause of action for libel may be stated although the alleged libelous article did not charge the aggrieved party with the commission of a crime defined by statute.

3. Same—*Pleading—Sufficiency.* In an action for damages for libel, the allegations of plaintiff's petition, together with the alleged libelous matter, considered, and held to state a cause of action against a demurrer thereto.

Appeal from Cherokee district court; Frank W. Boss, judge. Opinion filed January 9, 1926. Reversed.

*Charles Stephens* and *Frank E. Dresia,* both of Columbus, for the appellant.
*Fred A. Walker* and *C. B. Skidmore,* both of Columbus, for the appellee.

The opinion of the court was delivered by

Dawson, J.: Plaintiff brought this action for damages against defendant for publishing an article in defendant's newspaper, the Columbus *Daily Advocate,* which plaintiff alleged was untrue and malicious in certain particulars. It appears that plaintiff owned a farm near Columbus, which was assessed at $35.75 per acre; that 6.06 acres of the farm were condemned and taken for the use of a railway company; that plaintiff was awarded $1,312 as damages for the land so taken; and that plaintiff had appealed from the award and a jury had given him a verdict for $2,300, and a motion for a new trial was pending at the time the article was published. The offending article reads:

"Awarded Damages.

"Daniel A. Jerald Gets Judgment Against N. E. O.—Will Probably be Appealed—Jerald Awarded $2,300 by Jury for Railway Company Taking Up 6.06 Acres of Land with Right of Way.

"How much is an acre of land worth in the eyes of a jury, when the owner swore it was worth $35.75 per acre when the assessor called?

Appeal and Error, 3 C. J. 1046 n. 47; 2 R. C. L. p. 104. Libel and Slander, 36 C. J. pp. 1145 n. 46, 1150 n. 73, 1163 n. 19, 1164 n. 20, 1170 n. 30; 37 C. J. pp. 22 n. 15, 23 n. 25, 34 n. 92-93; L. R. A. 1915E, 275; 17 R. C. L. 289.

"How much should a street car company be stung, which puts a line of rails across a farmer's land, even though it increases the value of every acre of the farm, by reason of bringing the farmer's family in closer touch of town, and affording him an easier means of transporting his products to market?

"A verdict in the district court yesterday, which the company's legal representatives say is ridiculously excessive in damages assessed, will be appealed to the supreme court.

"The case referred to is that of Daniel A. Jerald against the Northeast Oklahoma Railway Company, in which Jerald appealed from an appraisers' award of damages.

"The Jerald farm is composed of 150 acres and is located north of the Taylor place, a few miles south of Columbus. The right of way of the N. E. O. crosses it on a quarter section line and takes up 6.06 acres of land.

"At the time the right of way was secured through condemnation proceedings some time ago, the board of appraisers, consisting of three entirely disinterested parties, placed the actual damage to the farm at $1,312.

"However, the plaintiff evidently considered that his farm had been damaged in excess to the amount given him and he employed the law firm of Stephens & Dresis and brought action in the district court.

"Jerald introduced a score of witnesses yesterday to testify that his farm had been damaged in excess of the amount he had been awarded by the board of appraisers.

"Witnesses for the street car company also testified in regard to the amount of damages sustained. Their opinion of the amount of damage ranged from $5 to $7.50 per acre.

"It was brought out in testimony during the trial that the farm had been assessed at $35.75 per acre last year.

"The street car company was represented by a Miami lawyer and Al F. Williams and Don Elleman of this city."

Plaintiff alleged that he did not swear to the assessment of his land at $35.75 per acre and was not asked or consulted by the assessor as to its value. The amended petition continues:

"And said language was used in defendant's said paper meaning and intending to charge this plaintiff with misrepresentation, perjury, fraud and misconduct, and insinuating and attempting to leave and in fact leaving the impression that said farm was only worth thirty-five dollars and seventy-five cents ($35.75) per acre at the time of said trial . . . all of which charges set forth in said newspaper article were false and untrue and known . . . by the said defendant, . . . to be untrue.

"That said article herein complained of was unfair, untrue, and maliciously written and published as aforesaid by defendant, . . . for the purpose of misleading the readers of said paper and prejudicing them against this plaintiff . . . and were so written and published to injure plaintiff's good reputation, and to expose him to hatred and ridicule and deprive him of public confidence, which said intended results said article did have, all to plaintiff's great damage as herein set out; . . .

"That the said Columbus *Daily Advocate* is distributed among a large num-

ber of people in the city of Columbus and surrounding towns and territory, and was so circulated and distributed on said date, containing said article, and that about the number of seven hundred (700) people received and read said article so published by defendant in said paper."

Plaintiff prayed for $5,000 as actual damages and $5,000 as punitive damages.

To this petition defendant lodged a demurrer which was sustained, and plaintiff brings the case here to have that ruling reviewed.

The first assignment of error related to the trial court's ruling, which sustained defendant's motion to strike certain paragraphs from plaintiff's original petition. But defendant shows that this stricken matter involved the merits of the action, and the ruling complained of was made on September 24, 1923, and this appeal was taken on October 21, 1924, which was too late to obtain a review of the point involved. (Civ. Code, §§ 565, 572, R. S. 60-3302, 60-3309; *Norman v. Railway Co.*, 101 Kan. 678, 168 Pac. 830; *Grain Co. v. Coöperative Association*, 109 Kan. 293, 198 Pac. 964, and citations.)

Passing then to the allegations of the amended petition, just what was wanting to state a cause of action? Appellee suggests that the printed matter at which plaintiff took umbrage was not libelous *per se*. Matter which is libelous *per se* is that character of written or printed words so obviously hurtful to the person aggrieved thereby that they need no explanation of their meaning and no proof of their injurious character. (36 C. J. 1150; 17 R. C. L. 264.) But here the question whether the printed words were libelous *per se* or only *per quod* is merely academic, since plaintiff's petition contained sufficient allegations of inducement and innuendo to make the defamatory article intelligible, to show its meaning and application and its consequent injurious effect on the party aggrieved thereby. (37 C. J. 34.) It seems rather obvious that the casual reader of this newspaper article would understand therefrom that the plaintiff had perpetrated some sort of dishonorable conduct—either upon the taxing authorities by getting his land assessed at the nominal figure of $35.75 per acre, or upon the condemnation commissioners by getting an allowance of $200 per acre for the land taken, or upon the trial court and jury in obtaining a verdict for $379.53 per acre as damages for the land taken. Now it may be that the newspaper article narrating this great disparity between the value of the land as assessed for taxation and its value as determined by the verdict and

judgment of the district court upon critical analysis does not amount to libel *per se;* but can it be declared as a matter of law that the newspaper article does not carry an imputation detrimental to the plaintiff? That is the single question involved in this appeal. Our statute defines libel thus:

"21-2401. A libel is the malicious defamation of a person, made public by any printing, writing, sign, picture, representation or effigy, tending to provoke him to wrath or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse, or any malicious defamation made public as aforesaid, designed to blacken and vilify the memory of one who is dead, and tending to scandalize or provoke his surviving relatives and friends."

Appellee urges the point that under the ordinary method of assessing land for taxes in this state the landowner is not required to swear to the value of his land, and it is argued that the statement that plaintiff swore his land was only "worth $35.75 per acre when the assessor called," could not charge him with a crime. There are decisions holding that in that situation, where no such crime was defined by statute and consequently where no such crime could be committed, such a writing did not and could not charge the aggrieved party with a criminal act, and the writing was consequently not libelous. (Newell on Slander and Libel, 3d ed., 129.) On a subject so prolific of litigation as libel, the student will find support for divers and sundry views, not only among different courts but among different justices of the same court. (See *State v. Grinstead,* 62 Kan. 593, 608, 612, 64 Pac. 49.) We are inclined to hold that the proper test of the libelous character of a publication lies in a fair application of the statute quoted above, and the fact that the offensive language, critically analyzed, does not charge the plaintiff with the commission of a crime is not enough to make the plaintiff's petition demurrable. In *Hetherington v. Sterry,* 28 Kan. 426, it was held:

"It is not necessarily a defense to an action of libel that every act charged in the alleged libelous article might be done without the violation of any law. It is enough if the acts charged are such as are calculated to render the party in the judgment of his fellows infamous, odious, or ridiculous." (Syl. § 1.)

In the opinion it was said:

"Neither is it true that an article is not libelous simply because the acts charged upon the plaintiff are such as he might do without violation of any law. Whatever might be the case as to slander, the law of libel is much broader. In the third edition of 1 Hill. Torts, p. 237, § 13, the author thus states the law:

Jerald v. Houston.

" 'So every publication, by writing, printing, or painting, which charges or imputes to any person that which . . . is calculated to make him infamous, odious, or ridiculous, is *prima facie* a libel, and implies malice in the publisher, without proof of an intent to vilify. (*White v. Nicholls*, 3 How. 266; *Curtis v. Mussey*, 6 Bray. 261.)' " (p. 429.)

This view of the law persists through our later decisions. We have held that it is libelous to write of a man as a eunuch (*Eckert v. Van Pelt*, 69 Kan. 357, 76 Pac. 909), yet such writing could not be construed as charging him with a crime. To write of officers of a corporation that no one locally has any faith in their integrity or ability does not state that those officers had committed a crime, but this court held such a writing was actionable *per se*. (*Schreiber v. Gunby*, 81 Kan. 459, 106 Pac. 276.) To cast aspersions on a man's pedigree does not charge him with a crime, but we have held it to be slanderous *per se*. (*Rohr v. Riedel*, 112 Kan. 130, 210 Pac. 644. See, also, 25 Cyc. 260; 17 R. C. L. 289.)

On behalf of the appellee it is argued that plaintiff's amended petition was lacking in certain essentials to state a cause of action for libel, particularly in plaintiff's failure to allege that the words were intended to defame plaintiff and that the readers of defendant's newspaper understood the words as conveying the alleged defamatory meaning. But the petition alleges that the article was unfair, untrue and written for the purpose of misleading defendant's readers and prejudicing them against plaintiff and to injure his good reputation and to expose him to ridicule and deprive him of public confidence, "which said intended results said article did have." Liberally construed as every pleading should be when its sufficiency is challenged by demurrer, it cannot be held that the petition was fatally defective on the point urged against it. (*Bowersox v. Hall*, 73 Kan. 99, 84 Pac. 557; *Balmer v. Long*, 104 Kan. 408, 179 Pac. 371.)

The trial court's ruling on demurrer was in effect a decision as a matter of law that the printed article in defendant's newspaper had no tendency to provoke plaintiff to wrath, that the article would have no appreciable tendency to expose him to public hatred, contempt or ridicule, nor tend to deprive him of the benefits of public confidence and social intercourse. This court holds the view that the article's freedom from these vices is not so obvious that it can be so declared, although a jury might properly so decide.

The judgment is reversed.

BURCH, J., dissenting.