No. 27,378.

SIDNEY H. KNAPP, *Appellee and Appellant*, v. RAYMOND GREEN and THE BLADE-EMPIRE PUBLISHING COMPANY, *Appellants and Appellees.*

SYLLABUS BY THE COURT.

LIBEL AND SLANDER—*Publications Actionable per se.* An article published in a newspaper concerning a person named or described therein which tends to provoke him to wrath, or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse is actionable *per se,* if the article is false.

Appeal from Cloud district court; JOHN C. HOGIN, judge. Opinion filed May 7, 1927. Affirmed in part and reversed in part.

*Charles L. Hunt, Frank C. Baldwin* and *C. J. Putt,* all of Concordia, for the appellants.

*R. L. Hamilton,* of Beloit, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: This is an action to recover damages for libelous articles published in a newspaper. The plaintiff in his petition sets out thirty-one causes of action. The defendants demurred to each of them; that demurrer was sustained as to numbers 5, 6, 7, 8, 10, 23, 24, 25, 30 and 31 of the causes of action, and overruled as to 1, 2, 3, 4, 9, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 26, 27, 28 and 29. The plaintiff appeals from the order sustaining the demurrer of the defendants to 5, 6, 7, 8, 10, 23, 24, 25, 30 and 31 of his causes of action, and the defendants appeal from the order overruling their demurrer to the remaining causes of action set out in the petition.

The petition discloses that at the times mentioned in it, the plaintiff was postmaster at Concordia and that Raymond Green was

---

Libel and Slander, 36 C. J. pp. 1145 n. 46, 1152 n. 7, 1283 n. 63; 37 C. J. pp. 35 n. 19, 36 n. 26, 37 n. 27; 17 R. C. L. 286.

Knapp v. Green.

the editor and majority stockholder of the Blade-Empire Publishing Company, a corporation, engaged in the publication of a daily newspaper known as the Concordia *Blade-Empire*, published at Concordia in Cloud county. The first cause of action is based on an article which appeared in that newspaper on June 23, 1922, and was as follows:

"'BOSSES' DISREGARD PROTESTS AGAINST COMMITTEEMEN.

"The election commission will meet to-morrow afternoon at 2 o'clock to pass upon the protests against the petitions which have been filed. Ray Green protested against the placing of six of the committeemen's names on the ballot because their petitions did not have the required number of signatures. Some of these were 'boss' candidates and some were not.

"'Boss' Knapp said Thursday he had instructed the county clerk 'to put all of the petitions on and that this would be done if no further protests were filed.' County Clerk Taylor stated that unless some kick was made the names would all go on the ballot regardless of number of signatures on each. 'Boss' Knapp made the further statement that he would have resigned as chairman of the committee when he received his post office appointment if he could have been permitted to name his successor. The bosses are going to stop at nothing to try and maintain their control of the Republican party machinery, for it has proved a profitable plum to them in the past."

The petition alleges that the article was false; that it charged that the plaintiff was unscrupulous and deceitful; that it provoked the plaintiff to wrath and exposed him to public hatred, contempt, scorn, and ridicule, and deprived him of the benefit of public confidence and social intercourse in the community in which he lived; and that it damaged him in the sum of $250. No special damages are alleged.

Defendants argue that the language used was not libelous *per se* and for that reason, because no special damages are alleged, the first cause of action set out in the petition does not state facts sufficient to constitute a cause of action against the defendants.

In 37 C. J. 36, the following language is found:

"When words in themselves not actionable become so by reason of some special damage occasioned by them, such special damage must be particularly averred in the declaration, even though express malice is proved. In such case it is necessary that the declaration should set forth precisely in what way the special damage resulting from the publication of the words. It is not sufficient to allege generally that plaintiff has suffered special damages."

Unless the language used was actionable *per se*, a cause of action is not stated because special damages are not pleaded. Was the language used actionable *per se?*

Section 11 of the bill of rights of the constitution of this state reads:

"The liberty of the press shall be inviolate: and all persons may freely speak, write or publish their sentiments on all subjects, being responsible for the abuse of such right; and in all civil or criminal actions for libel, the truth may be given in evidence to the jury, and if it shall appear that the alleged libelous matter was published for justifiable ends, the accused party shall be acquitted."

Section 18 of the bill of rights reads:

"All persons, for injuries suffered in person, reputation or property, shall have remedy 'by due course of law, and justice administered without delay."

Section 21-2401 of the Revised Statutes in part reads:

"A libel is the malicious defamation of a person, made public by any printing, writing, sign, picture, representation or effigy, tending to provoke him to wrath or expose him to public hatred, contempt, or ridicule, or to deprive him of the benefits of public confidence and social intercourse."

In 36 C. J. 1152, the following language is found:

"If 'libel' is defined by statute, the statutory definition governs, and any language which is fairly included in such definition is libelous *per se.*"

That rule has been followed in California and Texas. (*Schomberg v. Walker*, 132 Calif. 224, 226; *Stevens v. Snow*, 191 Calif. 58, 62; *Guisti et al. v. Galveston Tribune*, 105 Tex. 497, 504.)

The article was such as would tend to provoke the plaintiff to wrath, to expose him to public hatred, contempt, and ridicule, and to deprive him of the benefits of public confidence and social intercourse. If the article were false, it was a libel within section 21-2401 of the Revised Statutes, and for that reason was actionable *per se.* It was not necessary to allege special damages.

We quote from *Jerald v. Houston*, 120 Kan. 3, 6, 242 Pac. 472, as follows:

"Appellee urges the point that under the ordinary method of assessing land for taxes in this state the landowner is not required to swear to the value of his land, and it is argued that the statement that plaintiff swore his land was only 'worth $35.75 per acre when the assessor called,' could not charge him with a crime. There are decisions holding that in that situation, where no such crime was defined by statute and consequently where no such crime could be committed, such a writing did not and could not charge the aggrieved party with a criminal act, and the writing was consequently not libelous. (Newell on Slander and Libel, 3d ed., 129.) On a subject so prolific of litigation as libel, the student will find support for divers and sundry views, not only among different courts but among different justices of the same court. (See *State v. Grinstead*, 62 Kan. 593, 608, 64, Pac 49.) We are inclined to

hold that the proper test of the libelous character of a publication lies in a fair application of the statute quoted above [R. S. § 21-2401], and the fact that the offensive language, critically analyzed, does not charge the plaintiff with the commission of a crime is not enough to make the plaintiff's petition demurrable. In *Hetherington v. Sterry,* 28 Kan. 426, it was held:

" 'It is not necessarily a defense to an action of libel that every act charged in the alleged libelous article might be done without the violation of any law. It is enough if the acts charged are such as are calculated to render the party in the judgment of his fellows infamous, odious, or ridiculous.' (Syl. ¶ 1.)

"In the opinion it was said:

" 'Neither is it true that an article is not libelous simply because the acts charged upon the plaintiff are such as he might do without violation of any law. Whatever might be the case as to slander, the law of libel is much broader. In the third edition of 1 Hill. Torts, p. 237, § 13, the author thus states the law:

" ' "So every publication, by writing, printing, or painting, which charges or imputes to any person that which . . . is calculated to make him infamous, odious, or ridiculous, is *prima facie* a libel, and implies malice in the publisher, without proof of an intent to vilify. (*White v. Nicholls,* 3 How. 266; *Curtis v. Mussey,* 6 Bray, 261.)" ' (p. 429.)

"This view of the law persists through our later decisions. We have held that it is libelous to write of a man as a eunuch (*Eckert v. Van Pelt,* 69 Kan. 357, 76 Pac. 909), yet such writing could not be construed as charging him with a crime. To write of officers of a corporation that no one locally has any faith in their integrity or ability does not state that those officers had committed a crime, but this court held such a writing was actionable *per se*. (*Schreiber v. Gunby,* 81 Kan. 459, 106 Pac. 276.) To cast aspersions on a man's pedigree does not charge him with a crime, but we have held it to be slanderous *per se*. (*Rohr v. Riedel,* 112 Kan. 130, 210 Pac. 644. See, also, 25 Cyc. 260; 17 R. C. L. 289.)" (p. 7.)

In *Dever v. Clark,* 44 Kan. 745, 753, 25 Pac. 205, the court approved the following instruction:

"Although the plaintiff alleges in his petition that he has, on account of the publications complained of, sustained a damage of one thousand dollars on account of each of said publications, it is not necessary for him to prove any specific damage; for the law presumes the reputation of the plaintiff to be good, as also it presumes that his official duties as a public officer were honestly performed, and his professional obligations properly discharged; and an article which tends to hold him up to the public view as an unskilled lawyer and an incompetent officer, is libelous *per se* (*per se* meaning of itself), and entitles the plaintiff to damages, unless the defendant establishes the truth of said publication by a preponderance of the evidence."

The first cause of action, based on as mild as any one of the entire series of articles published, stated facts sufficient to constitute a cause of action against the defendant.

What has been said concerning the first cause of action might be repeated concerning every other cause of action set out in the peti-

tion, each of which stated facts sufficient to constitute a cause of action against the defendant.

The judgment of the court overruling the demurrer of the defendant as to certain causes of action set out in the petition is affirmed; the judgment sustaining the demurrer of the defendants to the other causes of action set out in the petition is reversed.

HARVEY, J., dissenting.