HIRAM J. PURDY, Respondent, *v.* THE ROCHESTER PRINTING COMPANY, Appellant.

The complaint, in an action for libel, in which plaintiff described himself as physician and coroner, charged the defendant with publishing in its newspaper a false and defamatory article whereby plaintiff was injured in his professional character. The article was set forth in full; it stated in substance that the body of a farmer, who apparently had been frozen to death, had been found in the highway ; that it had been taken charge of by plaintiff, as coroner, who impaneled a jury and was proceeding with an inquest when a physician, on making a careful examination, pronounced the man alive, and after about twenty-four hours labor restored him to consciousness. No mention was made in the article of plaintiff's professional character. No malice having been proved on the trial, a ver. dict was directed for defendant. *Held* no error ; that the article was not susceptible of any construction which would make the words actionable; as they only referred to plaintiff in his official capacity and simply exhibited a prompt and efficient performance of his duties in that capacity.
*Sanderson* v. *Caldwell* (45 N. Y. 398), distinguished.
*Purdy* v. *Rochester Printing Co.* (26 Hun, 206), reversed.

(Argued June 13, 1884; decided June 24, 1884.)

APPEAL from order of the General Term of the Supreme Court, in the fourth judicial department, made December 13,

1881, which granted a motion for a new trial, made upon exceptions ordered to be heard at first instance at General Term. (Reported below, 26 Hun, 206.)

This was an action for libel. The plaintiff, describing himself in his complaint as both physician and coroner, alleged that defendant printed and published in its newspaper, the "*Rochester Democrat and Chronicle,*" the following article:

"A NARROW ESCAPE FROM BEING BURIED ALIVE.

"*A well-to-do farmer found stiff and cold by the road side — He is supposed to have been frozen to death — A coroner takes charge of the case and impanels a jury — The inquest interrupted by a physician who declares the man to be alive — Animation restored.*

"About nine o'clock last Friday morning a stiffened body was found in the highway opposite the residence of John Morehouse, about two miles north of Seneca Falls. To all appearances the man was frozen, the limbs were rigid, the face was pale, the eyes had a glassy look, and there were no signs of life. Mr. Morehouse placed the supposed corpse in a wagon and conveyed it to Seneca Falls, where he delivered it to the police. It was placed in Mr. Metcalf's store and Coroner Purdy was notified. A case of this kind always attracts a crowd. The people gathered and scanned the face of the supposed dead man. Every one pronounced him dead — frozen to death. He was recognized as John Hammell, a farmer living two and a half miles south of the village. He had started for home the night before, but apparently became bewildered and went north instead of south. About ten o'clock some one knocked at Mr. Morehouse's door and asked for a drink of water. The family had retired; and, supposing the stranger to be a tramp, he was told that the well was outside and he could help himself. This is supposed to have been Hammell who was found near by next morning. Coroner Purdy arrived, summoned a jury, and began to inquire according to law how and by what means the man then and there lying dead came to his death. Dr. Lester looked at the supposed remains, and after a careful examination said the man was alive.

They laughed at him, but he insisted so strongly that life was still within the stiffened body that Nicholas Durnir, a brother-in-law of the deceased, caused the body to be removed to his store. The coroner's inquest was then interrupted, and the inquest, and perhaps a funeral, was averted. It was about 11 A. M. that Dr. Lester commenced his work of restoring life. Between two and three in the afternoon he was enabled to pry open his patient's mouth and administer some hot sling. Soon after the eyes opened and closed, and the physician felt sure of his case, while those who had contended that the man was dead were satisfied of their error. About seven o'clock in the evening he showed more signs of life, and seemed to make an effort to speak. He remained unconscious, however, until about four o'clock Saturday morning, when he awoke as from a long dream. He could not remember the past, however; knew that he started from home, but all after that was a blank. By nine o'clock Saturday morning consciousness was fully restored; and, although his fingers, toes, nose and ears are badly frozen, he will recover. He was removed to his home Saturday afternoon. Mr. Hammell can thank Dr. Lester for the fact that the coroner's jury did not return a verdict that he came to his death from exposure; that he was not placed in a coffin and buried alive, and that his family and friends were not called upon to mourn his unfortunate death."

The complaint alleged that this was false and defamatory, and averred in the first count that plaintiff was thereby injured in his professional character, and in a second statement of a cause of action claimed to have sustained general damage. The complaint contains averments of malice and other allegations common in such cases.

Upon issue joined a trial was had at the circuit, and no malice being proven the trial judge directed a verdict for the defendant.

*John Van Voorhis* for appellant. Special damages cannot be recovered or considered unless alleged in the complaint. (*Cooper* v. *Stone*, 2 Denio, 299, 300; Townsend on Libel and

Slander, §§ 197–203, 345; *Bennett* v. *Williamson*, 4 Sandf. 65; *Solns* v. *Lias*, 16 Abb. 311; *Terwilgor* v. *Wand*, 17 N. Y. 54; *Anonymous*, 60 id. 260; *Colwell* v. *Rogers*, 2 Abb. 193; Sedgwick on Dam. [539], 56.) The words published as set forth in the first count of the complaint are not actionable *per se*. (Townsend on Libel and Slander, § 180; Holt on Libel, 218.) When a published article does not refer to a plaintiff's special character, resort cannot be had to extrinsic evidence to make that actionable which otherwise would be innocent. (*Sanderson* v. *Caldwell*, 45 N. Y. 404–5; Moak's Underhill on Torts, 121; *Van Tassel* v. *Capron*, 1 Denio, 250; *Oakley* v. *Farrington*, 1 Johns. Cas. 129; *Kinney* v. *Nash*, 3 N. Y. 177; *Darley* v. *Roberts*, 2 Bing. N. C. 835; *Ayre* v. *Craven*, 2 Ad. & Ell. 2; *Jeffreys* v. *Payhen*, 4 Cro. Ch. 510; *Ireland* v. *McGaraish*, 1 Sandf. 155; *Anonymous*, 1 Ham. 83; *Foster* v. *Small*, 3 Whart. 138; *Edsall* v. *Russell*, 4 M. & G. 1090.) It is not actionable to charge one in a business or profession with want of skill or ignorance in a particular transaction. (Townsend on Libel and Slander [3d ed.], 194; *Tobias* v. *Harland*, 4 Wend. 541; *Camp* v. *Martin*, 23 Conn. 89; *Garr* v. *Selden*, 6 Barb. 416.) To charge the plaintiff with having summoned a jury in a proper case is not defaming him in his special character as a coroner. (2 R. S. [Edm. ed.] 767, § 1; id. 768, § 5.) A coroner's inquest is a judicial procedure. (*People* v. *Willetts*, 92 N. Y. 20; Penal Code, § 244.) When a state of facts is assumed by the court to be established, and on those facts the court nonsuits the plaintiff or gives a verdict for the defendant, no exception will be available unless the plaintiff requests to have the evidence as to those facts submitted to the jury. (*O'Neil* v. *James*, 43 N. Y. 84; *Develin* v. *Cooper*, 84 id. 410.)

*Peter H. Van Auken* for respondent. The article is libelous *per se*. (*People* v. *Cogswell*, 3 Johns. Cas. 354; *Steele* v. *Southwick*, 9 Johns. 214; *Cooper* v. *Greely*, 1 Denio, 347; *Root* v. *King*, 7 Cow. 613.) Written or printed slander is punishable both criminally and by action when the mere speaking of the words would not be punishable in either way. (*Pollard* v.

*Lyon,* 1 Otto, 225, 230, 235 ; *Sanderson* v. *Cauldwell,* 45 N. Y.
398, 405.) The court erred in permitting the defendant to show
absence of actual malice on the part of individual officers and
employes of the corporation defendant, and in refusing to
strike out such evidence on the motion of the plaintiff. ( *C. &
O. Bank* v. *Henry,* 42 L. T. [N. S.] 314.) The court erred in
permitting the defendant to give evidence as to reports in re-
gard to the subject matter of the publication. (*Matson* v. *Buck,*
5 Cow. 499 ; *Gilman* v. *Lowell,* 8 Wend. 373.) The article
not being privileged and its publication and falsity being con-
ceded, it was error for the court to direct a verdict for the de-
fendant and to refuse to allow the case to go to the jury when
so requested by the plaintiff. (*Howard* v. *Sexton,* 4 N. Y.
160 ; *Samuels* v. *Evening Mail Association,* 9 Hun, 294 ;
75 N. Y. 604 ; *Hamilton* v. *Eno,* 81 id. 116 ; *Bergmann* v.
*Jones,* 84 id. 62.)

DANFORTH, J. The learned counsel for the plaintiff con-
ceded, upon the argument, that no paragraph, phrase or par-
ticular portion of the article could be pointed to as libelous,
and we are unable to find in the words used or the general
scope of the publication any slanderous or defamatory mean-
ing, nor do we perceive that it is susceptible of any construc-
tion which would make the words actionable. It appears from
the complaint and evidence that the plaintiff was by profession
a physician and by office a coroner. In the article complained
of he is referred to in the latter capacity only, and nowhere
can be found a word or suggestion from which the most astute
inquirer could infer that he had any other than that public
occupation. As the language used did not relate to his pro-
fession in any way, so as to his office of coroner, it exhibits on
his part a prompt and efficient performance of its duties, and
it is impossible to see how any person reading it could ascribe
to the words used a defamatory meaning, or without the innu-
endo, apply them to the plaintiff in his professional capacity,
and there is no evidence that such application was intended.

The case of *Sanderson* v. *Caldwell* (45 N. Y. 398) is cited

by the respondent, but it is not any authority against this view. There the plaintiff was not only, in fact, a lawyer engaged in the practice of his profession, but the libel spoke of him as collecting claims of soldiers and sailors against the government — a professional act — and it was thought to be a just inference that the injurious words used by the defendant related to him in that character. Here it is quite otherwise. There is nothing to show that the words were so spoken of the plaintiff. They do not charge him with doing any act whatever as a physician, nor were they spoken of him in his business as such.

In *Oakley* v. *Farrington* (1 Johns. Cas. 130) the plaintiff was a justice of the peace, and sued the defendant because the latter called him a "damned rogue." In *Van Tassel* v. *Capron* (1 Denio, 250) the plaintiff was a magistrate also, and sued because the defendant had charged him as one who had combined with others to cheat strangers. In the first the plaintiff was nonsuited, and in the last a demurrer to the complaint was sustained for the reason that the words did not touch the plaintiff in his office.

So in the case before us. The plaintiff was not spoken of as a physician; he was not described as acting as such on the occasion in question, and if we assume, with the plaintiff's counsel — as I cannot, in fact, concede — that the language of the defendant could in any connection be deemed actionable, it is not so here.

It follows that the case was properly disposed of at the Circuit. The appeal, therefore, was well taken, and the order of the General Term should be reversed, and the defendant have judgment upon the verdict.

All concur.

Order reversed, and judgment accordingly.