Gillan vs. The State Journal Printing Co.

---

GILLAN, Respondent, vs. THE STATE JOURNAL PRINTING COMPANY, Appellant.

*May 22 — June 11, 1897.*

*Newspaper libel: Presumption of damage.*

1. A newspaper article predicting a fresh attack upon the state university at a coming meeting of the state teachers' association, and stating that plaintiff (a teacher, institute conductor, manager of a teachers' agency, and proprietor of an educational journal) and one H. (a normal school president) "are said to have had their heads together," and that plaintiff is known to have "repeatedly written high school teachers asking them to launch attacks upon the

Gillan vs. The State Journal Printing Co.

university," does not convey a charge of moral turpitude or have relation to plaintiff in any of his occupations, and is not therefore libelous *per se.*

2. A complaint in such a case, alleging, among other things, that the article was published during the progress of a newspaper controversy relative to the state university in which charges had been made against its management and the character of the work done, engendering hostility on the part of its friends towards the authors of the attack and all who encouraged the same, and just prior to a meeting of the state teachers' association at which the relations of the high schools with the university was to be a topic for discussion, is *held* insufficient to raise a presumption of injury, in the absence of an allegation of special damages.

APPEAL from an order of the circuit court for Dane county: GEO. CLEMENTSON, Judge. *Reversed.*

The action is for damages for the publication of an alleged libel. The alleged libel is in the following words:

" FRESH ATTACK PREDICTED.

"The Chicago Times-Herald says that somebody will spring a fresh attack at the state teachers' convention in Milwaukee next week. Circulars have been issued to high school teachers, asking these questions:

" 'How many pupils have entered the university from your school during the past three years?'

" 'How many have entered other institutions?'

" 'Do you consider that the shaping of the course of study by the university interferes with the practical working of your school?'

"An editor of a *little* educational paper in Milwaukee, named *Gillan,* and Normal President Harvey, who is the most politically inclined of all the educators of the state, *are said to have had their heads together. It is known that Gillan has repeatedly written high school teachers asking them to launch attacks upon the university.*"

This was an article published in the defendant's newspaper. The complaint alleged the publication of the article,

and, by way of inducement, the following facts as summarized in plaintiff's brief:

"That the University of Wisconsin is a state institution, and is supported by the public as the chief educational institution of the state. That it is annually attended by twelve hundred and more students. That of these a large number are preparing for and intend to become teachers. That the number of its graduates and its former students, now residents of Wisconsin, is very large, many of whom are principals, teachers, superintendents, and members of school boards.

"That the number of high schools in Wisconsin is two hundred and twenty-five, and that they employ as teachers a large number of graduates and former students of the state university. That there is a close, friendly, and mutually helpful relation existing between the university and these schools.

"That plaintiff has been for several years an institute conductor and a prominent teacher in Wisconsin, and, in addition, is the editor and owner of the Western Teacher, a monthly educational journal, devoted to advancing the interests of education and strengthening the system of public schools, particularly in Wisconsin; and that plaintiff is the manager and owner of a teachers' agency, organized and conducted for the purpose of securing schools for applicants desiring to teach, for which services a commission is charged, which annually amounts to a large sum of money and constitutes one of plaintiff's principal sources of income. That plaintiff's success in his profession and in his business depends upon the confidence of students, teachers, superintendents, school boards, and the public in his recommendations, his personal integrity, his professional reputation, and his strict impartiality; and that plaintiff depends largely for patronage for his educational journal and teachers' agency upon the students and graduates of the state university.

"That, for some weeks prior to the date of the alleged publication, a bitter controversy was waged in the newspapers of the state relative to the management of the university, and the work and habits of its students. That an attack was made upon it, in which grave charges of misconduct on the part of the regents and the president of the university, and as to the work of the students, were made; and that these charges were of a nature calculated to injure the university and impair the confidence of the public in its management. Thus hostile feelings were engendered on the part of the friends of the university against the authors of said attack, and against all others who encouraged the attack, and they were denounced as enemies of the university. Their motives were impugned, and their integrity questioned.

"That a meeting of the state teachers was called to be held a few days after the publication of the libelous article in question, at which the question of the influence of the university upon high schools was announced as a topic for discussion, and at which more than a thousand representative teachers were present.

"That the defendant published the alleged libelous article of and concerning the plaintiff, with intent to injure plaintiff in his standing as a citizen and professional man, and in his business, and to destroy the confidence of students, teachers, and school boards in his impartiality as manager of a teachers' agency, and to make it appear that plaintiff was guilty of improper and dishonorable practices in the conduct of his business relations with the high school teachers, secretly and stealthily creating hostility among them against the state university."

There was very ample innuendo to point out the meaning of the words complained of. There is a general allegation of damages, but no special damages are alleged. There was a general demurrer to the complaint, which was overruled.

From the order overruling the demurrer the defendant appeals.

For the appellant there was a brief by *Spooner, Sanborn & Spooner,* attorneys, and *Charles Philip Spooner,* of counsel, and oral argument by *A. L. Sanborn* and *Charles Philip Spooner.*

*James A. Sheridan,* for the respondent.

NEWMAN, J. In every legal cause of action for tort are two elements,— the injury, and the damages which flow from it. The injury is the unlawful act; the damages are the scale or measure of the recovery. Both elements must concur to give a right of action. The injury alone, without damage, does not give it; nor damages alone, without the injury. So, in order that it shall state a cause of action, the complaint must state facts which show, not only an injurious publication, but that the plaintiff has suffered damages from it. The law infers damages from the publication of language such as necessarily or presumably occasions damage. It is said, also, to infer damages from such language as "directly tends to the prejudice of any one in his office, profession, or trade." *Gottbehuet v. Hubachek,* 36 Wis. 515; *Singer v. Bender,* 64 Wis. 169. Such language is actionable without allegation or proof of damages. And a complaint which sufficiently alleges the publication of such language need not allege damages, for such will be presumed. But, in other cases, special damages, such as do not necessarily or probably flow from the publication of the language complained of, are essential to be alleged. Without such allegation no cause of action is stated.

In order that language published concerning one in a special character or relation shall be actionable *per se,* and without the allegation of special damages, it "must touch him" in that particular character or relation. It must be published of him in his official or business character. Town-

shend, Slander & L. (4th ed.), § 190; Odgers, Libel & S.
(1st Am. ed.), 65; *Kinney v. Nash*, 3 N. Y. 177; *Purdy v.
Rochester Printing Co.* 96 N. Y. 372. But when the publi-
cation conveys only a general imputation upon the plaintiff's
character, which would be similarly injurious to any one of
whom it might have been published, it is not actionable,
unless applied by the publication itself to the profession or
occupation of the plaintiff. *Sanderson v. Caldwell*, 45 N. Y.
398; *Moore v. Francis*, 121 N. Y. 199. So, it has been held
not actionable to say of a justice of the peace, "Squire Oak-
ley is a damned rogue;" or of a physician that he has com-
mitted adultery; or of the keeper of a restaurant, "You are
an infernal rogue and swindler;" or of an attorney, "He
has defrauded his creditors, and has been horsewhipped off
the course at Doncaster." This point is amply illustrated
by citations in the text books above referred to, and does
not need further illustration.

The question then seems to be resolved into this: Did the
publication complained of touch the plaintiff in his profes-
sion or occupation? While it does directly charge some
things which the plaintiff might well resent and wish to
deny, it certainly contains no words of defamation, nor any
which reflect upon the occupation of the plaintiff or the
manner in which it is conducted. It does not even mention
his teachers' agency or newspaper, except by way of de-
scription of his person. There are no words which touch
him in his occupation. It is alleged that the plaintiff and
President Harvey "have had their heads together," and
that the plaintiff "has repeatedly written high school teach-
ers asking them to launch attacks upon the university." It
is not quite clear what was intended by these imputations.
They are equivocal. But it is clear that they do not convey
a charge of moral turpitude, and that they have no relation
to the plaintiff in his occupation, either as a teacher, or as
a conductor of institutes, or as the conductor of a teachers'

Rossiter vs. The Ætna Life Ins. Co. of Hartford.

agency, or as the manager of an educational newspaper. They seem to imply criticism on conduct which has no necessary or natural connection with either. The reputed conduct would be equally reprehensible in any other. It impeaches neither his skill nor ability nor his conduct in his occupation. It relates altogether to matters outside of his business.

It is impossible to say that there is any very persuasive presumption that this publication either has worked or will work the plaintiff an injury. That seems to depend, in large measure, on which was the stronger or more popular side of the controversy mentioned in the complaint. If the plaintiff's actions met the approbation of the more popular side, *non constat* that the publication would not inure to his advantage, both financially and socially. The complaint is silent upon this point. Such damages as might or might not result are too remote and contingent to afford a basis for a satisfactory presumption.

It is considered that the publication will not support an action, unless special damages are proved. None having been alleged, the complaint does not state a cause of action.

*By the Court.*— The order of the circuit court is reversed, and the cause is remanded for further proceedings according to law.