SHAW, Appellant, vs. CRANDON PRINTING COMPANY, Respondent.

*October 8—October 28, 1913.*

*Libel: Malicious publication respecting candidate for office: Actionable words.*

1. Every written or printed publication which implies or may be generally understood to imply reproach, dishonesty, scandal, or ridicule of the person is a libel if false and maliciously published.

2. A complaint alleging malicious publication of a newspaper article falsely charging in substance that plaintiff, then a candidate for county office, was responsible for "throwing away $4,525 of the taxpayers' money" by accepting the lower of two bids for certain county bonds at a time when he controlled the bonding committee, and concluding: "Yet this man S. has the effrontery to ask the voters of the Fifth ward to vote for him for supervisor," is *held* to state a good cause of action for libel, the article being clearly capable of the meaning (ascribed to it in the complaint) that plaintiff was guilty of corrupt misconduct in aiding in the disposal of the bonds and thereby defrauding the county. *Forest Co. v. Shaw*, 150 Wis. 294, distinguished.

3. A newspaper article published after an election at which plaintiff was a candidate, speaking of him as "the boss of the reactionaries," as having an ambition "to break into the county board," as sacrificing his followers "in the hope of personal gain," as being an obstacle in the path of municipal progress; and referring to his campaign as having been "bolstered by questionable tactics," is *held* not libelous.

APPEAL from a judgment of the circuit court for Forest county: JAMES O'NEILL, Judge. *Reversed.*

The appeal is from a judgment dismissing the appellant's complaint with costs upon objection to any evidence under the complaint on the ground that it failed to state a cause of action. The complaint is as follows:

"(Venue and title.)

"The above named plaintiff, *Samuel Shaw,* in person,

complains of the above named defendant, *Crandon Printing Company,* a corporation, and for cause of action alleges:

"That said defendant is a domestic corporation with its principal office at the city of Crandon, in said Forest county.

"That defendant, at all the times hereinafter mentioned, was the editor, publisher, and proprietor of a newspaper published at said city and county.

"That said newspaper was published weekly, under the name and title of 'The Forest Echo,' and has been the official city newspaper for said city of Crandon from the time of the incorporation of said city in February, A. D. 1909, until the present time.

"That such newspaper, as plaintiff is informed and believes, has a wide circulation, having numerous subscribers, not only in the city of Crandon and Forest county, but it also circulates in other counties than Forest and in other states than Wisconsin.

"That plaintiff has been a subscriber for said newspaper at all the times hereinafter named and set forth in his complaint and now is such subscriber.

"That plaintiff has resided in said Forest county ever since its creation in the year 1885 and in the state of Wisconsin ever since the year 1852, and has held many important positions of trust and confidence in said county and state, but plaintiff has held no public office of any kind whatever since the beginning of the year 1899, when he completed his third term of office as district attorney of Forest county, Wisconsin, and ever since such time he has been and now is a private citizen.

"That during the years 1905, 1906, and 1907 there was considerable discussion among the citizens and taxpayers of Forest county in regard to the unsafe condition of the public records in the old court house, then standing and in use by the county; that such court house had once been on fire and was saved only by the most strenuous efforts of the citizens who happened to hear the cry of alarm; that such fire impaired the building to a considerable extent and rendered the keeping of the public records therein exceedingly hazardous. That the county board of Forest county, realizing the unsafe condition of the records, on the 14th day of January, 1908,

adopted a resolution to bond the county to the amount of $85,000, the proceeds to be used in building a court house, sheriff's residence, and jail for said county; but, owing to some difficulty which arose, this resolution was wholly rescinded on January 17, 1908, or three days after its adoption. Shortly after said date the county board adopted another resolution to bond the county to the extent of $45,000 for a new court house; but this resolution caused a great deal of unfavorable comment among the voters of the county for the reason that all payments of the principal were deferred for ten years from date of the bonds, and the last series of bonds could not be paid sooner than twenty years from date of issue. Because of adverse criticism by the voters of the several towns, the next county board wholly rescinded said resolution, known as 'No. 2,' on April 23, 1908. This same county board met again on September 23, 1908, and by proper resolution resolved to bond the county to the extent of $55,000 for a new court house, $5,000 payable on April 1, 1910, and $5,000 each year thereafter until all the bonds should be paid. This same resolution named as the committee to negotiate the sale of such bonds two of the members of the county board, viz. H. R. Messer of Laona and J. P. Libby of Crandon. *Samuel Shaw,* this plaintiff, a private citizen, practicing law and selling real estate at Crandon, was named as the third member of said committee, much to his surprise and greatly to his inconvenience. The bonding committee was urged by members of the county board to make a loan as soon as public interests would permit, as it was desirable to begin work on the new court house without delay. Accordingly said committee proceeded with all dispatch to effect the loan and succeeded so well as to complete its duties within seventeen days from date of its appointment, the county board allowing this plaintiff as compensation for his services the sum of $15, such sum having been allowed to plaintiff by said county board without plaintiff's making any charge for such services or putting in any bill therefor. Plaintiff, however, when told that a county order in such amount had been drawn up for him, accepted such order as full payment for his services, and never asked or received any other compensation or consideration whatever.

. "That on the 2d day of April, 1909, the defendant, with intent to defame, maliciously composed, wrote, and published in said newspaper of and concerning the plaintiff the following false and defamatory matter, to wit:

" 'The investigation into the recent sale of court-house bonds by the committee appointed by the county board for that purpose, has developed a, few startling things.   One of them is that the Harris Trust Company of Chicago and New York, one of the largest and most reputable concerns dealing in municipal bonds in the United States, bid for the court-house bonds $58,325 and accrued interest.   The committee sold the bonds to Thomas J. Bolger & Co. of Chicago for $55,000 flat, thus losing $3,325 and accrued interest.   The accrued interest would amount to more than $1,200.   The bids for the bonds were substantially in the same form by both firms, excepting the price.   No explanation has been made by the committee or reason given by it for throwing away the $4,525 of the taxpayers' money. , The bonding committee consisted of J. P. Libby, *Samuel Shaw* (meaning this plaintiff), and H. R. Messer.   The record shows that Mr. Messer voted against accepting the smaller bid.   It is generally reported that Mr. Libby was a tool of *Mr. Shaw* (meaning this plaintiff).   This leaves the responsibility for this act upon *Mr. Shaw* (meaning this plaintiff).   Yet this man *Shaw* (meaning this plaintiff) has the effrontery to ask the voters of the Fifth ward to vote for him for supervisor.'

"Plaintiff further alleges that said defendant corporation published the aforesaid article of and concerning this plaintiff and intended thereby to charge and in fact did charge that this plaintiff as a member of such bonding committee betrayed the trust reposed in him by said county board, and accepted a bribe from the successful bidder for said bonds for such betrayal of trust, to the great loss and damage of said Forest county, and contrary to the criminal statutes of this state in such case made and provided.

"Plaintiff further alleges that the foregoing and all other libelous matter set out in this complaint was published with the knowledge, acquiescence, and consent of the members of the governing body of defendant corporation, and that such corporation has never retracted or repudiated such libelous

publications or any of them; that such policy of defendant corporation was actuated by malice toward plaintiff and for the purpose of wantonly degrading him in the public esteem and of injuring his reputation and business; that the articles which form the basis for this action were actuated by the same malicious purpose and were published in execution of such purpose.

"Plaintiff further alleges that the officers of defendant corporation, as shown by its last report on file in the office of the secretary of state of Wisconsin, are the following, to wit: President, C. O. Decker; vice-president, P. Shay; secretary, Edw. Laird; treasurer, B. McGinley; director, W. W. Waite, all of such officers being of Crandon, Wisconsin, and plaintiff is not informed who are the other stockholders in said corporation.

"That on the 9th day of April, 1909, the defendant, with intent to defame, maliciously composed, wrote, and published in said newspaper of and concerning the plaintiff the following false and defamatory matter, to wit:

"'Every man on the so-called incorporation ticket was elected. Only one man had a close run, Alex. Black for supervisor in the Fifth ward, who was opposed by the boss of the reactionaries (meaning this plaintiff). The ambition of the boss (meaning this plaintiff) to break into the county board (meaning to be illegally or corruptly elected a member of the county board of supervisors of Forest county) was perhaps the only reason why a whole contesting ticket was put in the field so soon after the sweeping defeat a few weeks ago. In the hope of personal gain (meaning moneys to be illegally taken by plaintiff from the treasury of said Forest county) he (meaning this plaintiff) was willing to sacrifice his (meaning plaintiff's) followers. His (meaning plaintiff's) hope was vain, since he (meaning this plaintiff) has gone down to defeat with the rest of the men who have stood as obstacles in the path of municipal progress. The failure of his (meaning plaintiff's) last campaign, bolstered as it was by questionable tactics (meaning some corrupt or illegal act by plaintiff), should convince the boss (meaning this plaintiff) that the days of his (meaning plaintiff's) self-assumed leadership in this community are over. By the

verdict of Tuesday he (meaning this plaintiff) stands discredited by the people of his (meaning plaintiff's) town. Better men—men of progress and public spirit—are called to the front. It is well for the new city that it is so.'

"That by reason of such publications on April 2, 1909, and on April 9, 1909, plaintiff has been seriously damaged in his business as a real-estate dealer and in his profession as a lawyer and has been caused great mental suffering.

"That since such publication of libelous and defamatory matter against this plaintiff as above set forth said defendant corporation has printed and published in its said newspaper many other statements showing malice on its part against plaintiff, such statements tending to bring plaintiff into public hatred, contempt, and ridicule, to plaintiff's great damage.

"That by reason of the premises plaintiff has been injured in his reputation, business, and profession in the sum of $10,000, for which he prays the judgment of this court, together with the costs and disbursements of this action, and such other and further order, judgment, or relief as to the court may seem just and equitable."

For the appellant there was a brief by *Samuel Shaw* in person and *G. H. Dawson,* of counsel, and oral argument by *Mr. Shaw.*

For the respondent there was a brief by *A. C. Umbreit* and *John F. Hooper,* and oral argument by *Mr. Umbreit.*

KERWIN, J.    We think the article published on April 2, 1909, is capable of the meaning ascribed to it in the innuendo, and it is alleged that the article was published maliciously.

It is well settled that an action for libel may be sustained for published words, even though the same words spoken would not be actionable *per se.    Bradley v. Cramer,* 59 Wis. 309, 18 N. W. 268; *Cary v. Allen,* 39 Wis. 481; *Cottrill v. Cramer,* 43 Wis. 242.

Words which tend to bring a person into public hatred,

contempt, or ridicule when published are actionable, though the same words spoken might not be. Every written or printed publication which implies or may be generally understood to imply reproach, dishonesty, scandal, or ridicule of the person is a libel if false and maliciously published. *Bradley v. Cramer, supra; Gauvreau v. Superior P. Co.* 62 Wis. 403, 22 N. W. 726; *Solverson v. Peterson,* 64 Wis. 198, 25 N. W. 14; *Street v. Johnson,* 80 Wis. 455, 50 N. W. 395; *Robinson v. Eau Claire B. & S. Co.* 110 Wis. 369, 85 N. W. 983; *Scofield v. Milwaukee Free Press Co.* 126 Wis. 81, 105 N. W. 227; *Wandt v. Hearst's Chicago American,* 129 Wis. 419, 109 N. W. 70; *Downer v. Tubbs,* 152 Wis. 177, 139 N. W. 820; *Cary v. Allen,* 39 Wis. 481; *Buckstaff v. Viall,* 84 Wis. 129, 54 N. W. 111.

Under the foregoing authorities we think it clear that the article referred to and published April 2, 1909, is libelous. The defendant answered the complaint upon the merits and pleaded justification and truth of the matter published, as will appear from the statement of facts. Objection was raised to the complaint for the first time upon the trial. The objection was sustained and the complaint dismissed, so that for the purpose of this appeal all the allegations of the complaint must be taken as true.

At the time the article was published the plaintiff was a candidate for office and the article obviously was published with intent to injuriously affect his candidacy. We think the article would ordinarily be understood by the reader as charging plaintiff with gross misconduct in the sale of the bonds referred to, in "throwing away the $4,525 of the taxpayers' money" by accepting the smaller bid. The article states:

"The committee sold the bonds to Thomas J. Bolger & Co. of Chicago for $55,000 flat, thus losing $3,325 and accrued interest. The accrued interest would amount to more than $1,200. The bids for the bonds were substantially in the

same form by both firms, excepting the price. No explanation has been made by the committee or reason given by it for throwing away the $4,525 of the taxpayers' money. The bonding committee consisted of J. P. Libby, *Samuel Shaw,* and H. R. Messer. The record shows that Mr. Messer voted against accepting the smaller bid. It is generally reported that Mr. Libby was a tool of *Mr. Shaw.* This leaves the responsibility for this act upon *Mr. Shaw.* Yet this man *Shaw* has the effrontery to ask the voters of the Fifth ward to vote for him for supervisor."

Taking all the allegations of the complaint, admitted as they are under objection to the complaint on trial for want of facts sufficient to constitute a cause of action, we are satisfied that the complaint states a good cause of action for libel on the article published April 2, 1909.

Some of the cases relied upon by respondent involve spoken, not written or printed, words, and are not controlling in the instant case. The cases cited involving libel or written or printed words are distinguished from the instant case. *Hofflund v. Journal Co.* 88 Wis. 369, 60 N. W. 263, was where there was reference in the published article to a deficit in the ex-treasurer's account, but no direct charge was made against him. On the contrary, the article stated that it was claimed that the shortage was for fees collected and which belonged to the office and not to the county. *Gillan v. State Journal P. Co.* 96 Wis. 460, 71 N. W. 892, is a case where the article referred to an attack upon the University of Wisconsin, and it was held not actionable *per se* because it did not touch the plaintiff in his business or occupation nor convey a charge of moral turpitude. In *Ruhland v. Cole,* 143 Wis. 367, 127 N. W. 959, the distinction is well drawn showing that the case is clearly distinguishable from the case now before us. The late case of *Arnold v. Ingram,* 151 Wis. 438, 138 N. W. 111, is also cited by counsel for respondent as supporting their contention. But in that case the decision turned chiefly upon the proposition that the main parts of the

article were found by the jury to be true. The opinion also discusses the question of qualified privilege or the right of fair comment and criticism and other propositions, but does not reach the question here.

On the point that the article does not impute to plaintiff dishonesty or betrayal of trust, counsel for respondent also rely upon *Forest Co. v. Shaw,* 150 Wis. 294, 136 N. W. 642. In that case the gravamen of the charge was a breach of trust by plaintiff as a member of a committee of the county board in his official capacity, and the court held that only members of the county board could act upon the committee, and the defendant in that case, not being a member of the board, could not act officially, therefore could not be guilty of official misconduct, and that the allegations of the complaint were not sufficient to charge the defendant personally with fraud so as to make him individually liable. It is said in the opinion: "Further, there is no fact alleged that impeaches the good faith and honesty of the defendant in believing the bid accepted to be a better bid for the county's interest than the rejected one." The article of April 2d is clearly capable of the meaning that plaintiff was guilty of corrupt misconduct in aiding in the disposal of the bonds and thereby defrauding the county.

Respecting the second article set out in the complaint and dated April 9, 1909, we are of opinion that it is not libelous. The substance of this article charges the plaintiff with being a political boss coupled with the ambition to break into the county board. This simply means that he was a ruling power in politics or in a faction of a political party and was desirous of obtaining a seat on the county board. The reference to hope of personal gain in the article and sacrifice of his followers obviously was intended to charge plaintiff with securing his election by any means in his power, which means are not alleged or referred to as being dishonorable or dishon-

est.  To charge one with standing as an obstacle in the path of municipal progress and with being a reactionary cannot be held to bring one into public hatred, contempt, or ridicule. Nor does it appear that the reference to questionable tactics was libelous in the connection in which it was used.    The article of April 9th was published after the election and cannot be said to in any manner injure the plaintiff in his candidacy for office.

Since the judgment must be reversed it is unnecessary to consider the question of costs in the court below discussed by appellant.

*By the Court.*—The judgment is reversed and the cause remanded for a new trial.