No. 31,341

WILLIAM SHERIDAN, *Appellee,* v. GOMER T. DAVIES and HARRY DAVIES, *Appellants.*

(31 P. 2d 51.)

Opinion filed April 7, 1934.

*M. V. B. Van De Mark,* of Concordia, for the appellants.
*Leon W. Lundblade,* of Beloit, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action for damages caused by the publishing of an alleged libelous article in the newspaper owned and published by the defendants, and the issue involved is whether or not the article published was libelous *per se.*

The trial court overruled the demurrer of the defendants to the amended petition and also overruled defendants' motion to strike out of the amended petition certain allegations concerning the meaning, intention and imputation of the language used in the published article.

We have numbered all the paragraphs in the article for the purpose of reference thereto in this opinion. There are six of them, Nos. 6, 7, 12, 13, 14 and 15, which the plaintiff, appellee here, insists contain matter libelous *per se,* particularly paragraph 6. These particular paragraphs are as follows:

(6) "Sheridan was deputy oil inspector by the grace of a state Democratic administration. He is unceremoniously thrown out on his ear by the same administration—no doubt, for cause."

(7) "Yes, political cause. It is a fact, isn't it, Mr. Danenbarger, that you and your little coterie of political marplots conspired to beat Frank Peterson, Democratic county commissioner, for reëlection?"

(12) "An office holder should know that the unpardonable political sin is disloyalty to the party, and ingratitude to political friends and benefactors."

(13) "That is one thing that the editor of the *Press*, Sheridan *et al.*, do not appreciate nor understand."

(14) "Sheridan was appointed by a state Democratic administration. He was bounced by the same administration."

(15) "We wonder if some Cloud county Democrat didn't have something to do with it?"

The entire article is attached to the amended petition as an exhibit. It was published by the defendants at Concordia, Kan., on December 15, 1932, in their paper called *The Kansan*. It begins with the copy of an article published in *The Concordia Press*, just shortly prior thereto and after the November election of 1932, stating in effect that the plaintiff, Sheridan, had been appointed as a deputy oil inspector in May or June, 1931, but was discharged by the oil inspector, who was a Republican, because of the defeat of the Democratic candidate for governor, even before the new administration came into power. This was followed by four paragraphs which attempted to correct the statement copied from *The Concordia Press*, by stating that the plaintiff was both appointed and discharged by the Democratic administration, he being a Democrat, and although the oil inspector was a Republican, he, too, was appointed to that position by the Democratic governor, and in the appointment and discharge of subordinates was as an experienced politician simply doing as directed by his superior officer. Then follows the sixth paragraph, the last sentence of which is especially urged as libelous, it being as follows:

". . . He is unceremoniously thrown out on his ear by the same administration—no doubt, for cause."

Literary rules as well as fairness in interpretation require that we read with this sentence the first sentence of the next paragraph, which is, "Yes, political cause." To be discharged from office for cause is a much more serious accusation than for political cause. Incumbents of all political offices, when succeeded by those of a different political party, after an election are displaced or removed for political cause, and this applies to elective officers from president down as well as those holding subordinate positions under political appointments. The four subsequent paragraphs above quoted, as

well as the four intervening paragraphs and the three closing lines of the article (which were not quoted above) all tend to show that the political feature involved in the discharge of the plaintiff from the political office he had held was politics within the Democratic party, or due to a split in the Democratic party in Cloud county and in that part of the state.

Political parties are recognized in our national and state governments. We have many state laws authorizing and recognizing their existence, their rights, privileges and limitations. The primary law recognizes the existence of factions or divisions within each and every party. Any member of a political party has under our law the right and privilege of aligning himself with any of such factions or divisions within his own political party. Such alignment is usually a strong ground for preference or rejection by those authorized to fill appointive political positions. Why should one be appointed to or continue to hold such a political position unless he is in harmony with the political policies of the appointing power, when neither civil service nor any similar rule has been made to apply to such office?

Plaintiff says in his petition that these statements above quoted from the article published by the defendants were false and untrue, and were known by the defendants to be false and untrue when they were published. The question before us being on a ruling upon a demurrer to the petition, we must accept the allegations of the petition to the effect that these statements as made were false and known by the defendants at the time to be false. The question therefore is, Was the falsely charging of the plaintiff with being discharged for political cause of a defamatory character? In discussing this question it is said in 17 R. C. L. 355:

"According to one line of decisions, while fair comment and criticism are admissible, the privilege of discussion in such cases does not extend to the making of false statements of fact; but if a charge is false, even though it is made in good faith, and with reasonable cause to believe it true, it is actionable if of a defamatory character."

It was said in the case of *Knapp v. Green*, 123 Kan. 550, 256 Pac. 153:

"An article published in a newspaper concerning a person named or described therein which tends to provoke him to wrath, or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse, is actionable *per se*, if the article is false." (Syl.)

Plaintiff alleges that the article imputed that he had been guilty of misconduct and had betrayed his own party, and that the false matters therein had provoked him to wrath and exposed him to public hatred, contempt, scorn and ridicule and deprived him of public confidence and social intercourse in the community in which he lives and elsewhere and exposed him to the hatred, contempt, scorn and ridicule and deprived him of the confidence of those within his political party in Cloud county and elsewhere. These charges are nearly all answered by the simple reading of the most objectionable parts of the article in the light of the general political usages and customs in this country in line with the two authorities above quoted. The article nowhere charges dishonesty, impropriety or immoral conduct. It does not charge disloyalty to the Democratic party. At most it charges disloyalty to a certain faction in that party—a very different situation from the charge in the case of *Schreiber v. Gunby*, 81 Kan. 459, 106 Pa. 275, made in a letter against officers of a corporation speaking of them as "tricky men" and dishonest; also different from the slander contained in the letter of a defendant about his brother "doing him all the dirt he can," always trying to belittle him in business and having borrowed money and refusing to pay the same, being the case of *Kozel v. Kozel*, 104 Kan. 530, 531, 180 Pac. 278. Neither is it necessary that the article charge the commission of a crime, as stated in the second paragraph of the syllabus in the case of *Jerald v. Houston*, 120 Kan. 3, 242 Pac. 472.

"Rule followed that a cause of action for libel may be stated although the alleged libelous article did not charge the aggrieved party with the commission of a crime defined by statute." (Syl. ¶ 2.)

In that case the plaintiff charged the publisher with imputing dishonest motives to him in reciting the difference between the assessed value of the land and the value of it as testified to by him in obtaining a condemnation award and later a judgment for a right of way across it. The case was returned to this court after trial and is reported in 124 Kan. 657, 261 Pac. 851, and the detailed article concerning the trial had and results obtained before the condemnation commissioners and the trial court was held not libelous *per se*.

The case of *Hanson v. Bristow*, 87 Kan. 72, 127 Pac. 764, is another instance where a plain statement of occurrences by a newspaper was held not to be libelous *per se*.

It was held in *Coleman v. MacLennan*, 78 Kan. 711, 98 Pac. 281:

"If the publisher of a newspaper circulated throughout the state publish an article reciting facts and making comment relating to the official conduct and character of a state officer, who is a candidate for reëlection, for the sole purpose of giving to the people of the state what he honestly believes to be true information, and for the sole purpose of enabling the voters to cast their ballots more intelligently, and the whole thing is done in good faith, the publication is privileged, although the matters contained in the article may be untrue in fact and derogatory to the character of the candidate." (Syl. ¶ 1.)

In the case of *Shaw v. Crandon Printing Co.*, 154 Wis. 601, it was held:

"A newspaper article published after an election at which plaintiff was a candidate, speaking of him as 'the boss of the reactionaries,' as having an ambition 'to break into the county board,' as sacrificing his followers 'in the hope of personal gain,' as being an obstacle in the path of municipal progress; and referring to his campaign as having been 'bolstered by questionable tactics,' is *held* not libelous." (Syl. ¶ 3.)

It was held in *Duffy v. New York Evening Post Co.*, 109 App. Div. (N. Y.) 471:

"A newspaper article which speaks of a Republican political candidate as ' "Koke" Duffy. Absolutely devoid of any knowledge of the customs of polite men. . . . Devotes his time and energy more to assisting the Tammany leaders than to working for his own nominal party. . . . Apparently knows no more of and cares no more for political principles than he does of the Silurian age in geology. . . . A most unworthy choice,' is not libelous *per se*; . . .'" (Syl.)

In the case of *Barr v. Providence Telegram Publishing Co.*, 27 R. I. 101, it was said:

"Defendant published in its newspaper an article concerning plaintiff, a horseshoer and carriage smith, and who was also chairman of the democratic city committee, the publication being a few weeks prior to the annual election, stating: 'The spectacle of such eminent exemplars of democratic sentiment and republican affiliations as (plaintiff) sitting down in secret conference and selecting nominees for the Democratic party is one the ridiculousness of which would create nothing but amusement were it not that the interests of a great party are seriously involved. . . .'

"*Held,* that the words used did not touch plaintiff in respect to his calling, and were not actionable." (Syl.)

In the case of *Sullivan v. Ill. Pub. & Printing Co.*, 186 Ill. App. 268, the rule is concisely stated thus:

"That political leaders are subject to much criticism and ridicule not taken seriously by the reading public should not be lost sight of in determining whether any given article tends to impeach the honesty, integrity, virtue or reputation of such a person, and thereby to expose him to public hatred, contempt, ridicule or financial injury, which it must be held to do to fall within the statutory definition of libel." (Syl. ¶ 3.)

In order for any published article to be libelous *per se* the words used must be defamatory, which is defined in 36 C. J. 1142 as follows:

"'Defamatory' means calumnious; containing defamation; injurious to reputation; libelous; slanderous. Words which produce any perceptible injury to the reputation of another are called 'defamatory.'"

On page 1150 it is further said:

"Words which, upon their face and without the aid of extrinsic proof, are injurious are defamatory *per se*. . . . "

Under these decisions and definitions we conclude that the article published in the case at bar was not defamatory or libelous *per se,* even aside from the consideration of the question of the qualified privilege of newspapers in the publication of official matters.

The judgment is reversed and the cause remanded with directions to sustain the demurrer to the amended petition.